SHERMAN et al. v. AMERICAN SECURITY & TRUST CO. et al.

Court of Appeals of District of Columbia.
Submitted February 9, 1927. Decided May 2, 1927.

Petition for Rehearing Denied May 28, 1927.

No. 4513.

1. Wills ⊚⇒684(3)—Will devising part only of income of trust held to intend that balance of income, and after death of any devisee income payable to him, should become part of corpus of estate.

Where will created trust and provided that 40 per cent. of net income should be paid to particular daughter, and 40 per cent. to particular son, and 3 per cent. to grandson, and that as such devisees died the income payable to them should "go to and form a part of the body of my estate to be held by said trustee and disposed of as hereinafter directed," held, that the undistributed 17 per cent. of the income, or the income payable to any one of the devisees after the death of such devisee, was to become part of the corpus of the trust estate, and not to be paid to or accumulated for residuary legatee or ultimate distributee.

2. Wills ⊚⇒452—Doubt in construing will should be resolved in favor of testator's kindred.

Doubt as to the construction of a will as between kindred of testator and college should be resolved in favor of kindred.

Appeal from Supreme Court of the District of Columbia.

Action by Mary Stella Sherman and another against the American Security & Trust Company and another. From a decree for defendants, plaintiffs appeal. Reversed, and cause remanded, with directions.

F. S. Tyler and J. C. Adkins, both of Washington, D. C., for appellants.

P. E. Lesh and W. B. Guy, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. A bill in equity was filed in the Supreme Court of the District of Columbia by the appellants for a construction of the will of one Albert E. Seip. The case was submitted on bill, answers, and stipulation of facts. From a decree in favor of the defendants, this appeal was taken.

[1] It appears that the testator devised and bequeathed all of his estate to the defendant American Security & Trust Company (the executor and trustee named, in the will) in trust, with full power to manage the same, to sell and convey real estate and personal property; and reinvest the proceeds thereof, and to do everything requisite to carry into effect the provisions of the will.

The testator left surviving a widow, two daughters, one son, and a grandson. After making appropriate provision for his wife, he left a nominal sum to one daughter, Bertha Catherine Loomis, with the statement that she had been provided for out of his estate through her mother. There were further bequests, which are not important here.

The provisions of the will pertinent to this inquiry are as follows:

"Fourth. And upon the further trust to pay to my daughter Mary Stella Fry, now living in the city of Los Angeles, California, forty (40) per centum of the net income of my said estate annually, in quarter-yearly payments, for and during the term of her natural life.

"Fifth. And upon the further trust to pay to my son, Albert Birney Seip, of Washington City, District of Columbia, forty (40) per centum of the net income of my said estate annually, in quarter-yearly payments, for and during the term of his natural life.

"Sixth. And upon the further trust to pay to my grandson, Arthur Llewellyn Bond, of Lancaster, California, three per centum of the net income of my said estate annually, in quarter-yearly payments, for and during the term of his natural life."

"Thirteenth. And upon the further trust that as the devisees or legatees named in the fourth, fifth, sixth, paragraphs of this my last will and testament shall die, the sum or sums so lapsed shall go to and form a part of the body of my said estate, to be held by said trustee and disposed of as hereinafter directed, with the exception that in case through misfortune or unavoidable loss the net income from my estate shall fail to yield annually the sum of twenty-five hundred dollars to either of the devisees or legatees named in paragraphs fourth and fifth of this my last will and testament, then the survivor or survivors shall be paid sufficient from such lapsed legacies to equal the sum above specified, or as near that amount as may be. Until the happening of the contingency hereinafter mentioned in the fourteenth paragraph of this my last will and testament, my trustee is directed to invest in good, safe and secure interest-bearing or dividend-paying securities all such lapsed sums or amount, with the exception above mentioned in this paragraph.

"Fourteenth. And upon the further trust that upon the decease of all the devisees or legatees named in the fourth, fifth and sixth

paragraphs of this my last will and testament then my trustee shall convey, transfer and set over unto the Trustees of Lafayette College of Easton, Pennsylvania, their successors and assigns, all of my estate, real, personal and mixed, in whichsoever form it may then exist; it being my desire and will that said Trustees of Lafayette College, its successors and assigns, shall be the residuary devisees or legatees of the whole of my remaining estate; and I hereby devise, bequeath and give unto the said Trustees of Lafayette College, of Easton, Pennsylvania, its successors and assigns, all of my estate, real, personal and mixed, upon the winding up of said trust. Having made many personal sacrifices for many years to accumulate this fund for the education of deserving youth in the college in which I was for some time a student, I sincerely hope that the income of this bequest will be used each year in assisting poor and deserving students, as well as furthering the highest and best interests of the college."

It will be observed from the foregoing provisions of the will that 83 per cent. of the net income of the estate was to be distributed to the beneficiaries named in the fourth, fifth, and sixth paragraphs of the will; 40 per cent. to Mary Stella Fry (the appellant, Mrs. Sherman), 40 per cent. to the son, Albert Birney Seip, and 3 per cent. to the grandson, Arthur Llewellyn Bond. The son died in 1923.

It is contended by the plaintiffs that the undistributed 17 per cent. of the income passes into the corpus of the estate each year, thus becoming principal, and that appellants Sherman and Bond are entitled each year to 40 per cent. and 3 per cent., respectively, of the income of the enlarged principal. It is also contended that after the death of the son the 40 per cent. of the income bequeathed to him likewise passed into the principal of the estate, and that plaintiffs Sherman and Bond are entitled each year thereafter to 40 per cent. and 3 per cent., respectively, of the income of the estate so increased. Both contentions were denied by the trial court. The plaintiffs were decreed to be entitled only to 40 per cent. and 3 per cent., respectively, of the income of the estate as it stood when the trust was created, excluding them from sharing in the income from the increase of the corpus of the estate by 17 per cent. each year and of the additional 40 per cent. each year after the death of the son.

It appears that the will was contested by the daughter, Mrs. Loomis, and a compromise was made by which she was paid the sum of $20,000, $5,000 of which was contributed by the plaintiff Mrs. Sherman and $15,000 by the defendant Lafayette College. It was provided in the compromise contract that the portion contributed by the college should be regarded merely as an advancement to the college out of the principal of the testator's estate on account of its distributive share under the will, which was to be treated as a standing obligation against the college, on which interest should be paid at the rate of 6 per cent. per annum. The contract then provided as follows:

"That portion of the income derived and to be derived from the residue of the said estate, which shall remain after the payments directed to be made from the income, and which, under the provisions of the said will, is to accumulate for the said college, is to be applied semiannually in payment of the said interest and in reduction of the principal of said obligation, until the same shall be fully paid, unless the trust created by the said will shall be sooner terminated and the estate thereupon become distributable to the said college; and upon final distribution to the said college the said executor and trustee shall receive from it full credit for the income so applied to the payment of the said obligation and for the balance, if any, remaining unpaid thereon."

We think the provisions of this contract are unimportant as affecting the present issue. The contract in simple terms was a compromise with the daughter Mrs. Loomis for the sum of $20,000, of which the plaintiff Mrs. Sherman agreed to pay $5,000 and the college agreed to pay $15,000, with the further agreement that the $15,000 should stand as an obligation against the college bearing 6 per cent. interest, the interest to be paid from the portion of the income of the estate which under the provisions of the will would accumulate to the benefit of the college, and if the income annually amounted to more than sufficient to meet the interest obligation the balance should be credited as a payment upon the principal sum of $15,000 thus assumed by the college.

On June 6, 1919, the college and the American Security & Trust Company entered into an agreement under which it appeared that $1,574.81 inheritance tax had been assessed by the state of Minnesota against certain property belonging to the estate located in Duluth, together with interest thereon, amounting to the total sum of $1,755.90. Under this agreement the college and the trust company provided for the payment of this amount under the same conditions and terms as specified in

the contract of November, 1917. This contract was made without notice to the daughter, Mrs. Sherman.

It appears from the answer of the American Security & Trust Company "that by reason of the application of the said 17 per centum of the income to the payment of interest upon the two advances aforesaid made to the Trustees of Lafayette College and to the repayment of the principal sums so advanced, the advance made under the agreement of June 6, 1919, has been fully repaid to the corpus of the said estate, and the advance made under the agreement of November 26, 1917, has been fully paid as to interest and curtailed as to principal."

It seems clear from the terms of the will that the 17 per cent. of the income over and above the 83 per cent. bequeathed to the daughter, son, and grandson was intended by the testator to go into the corpus of the estate, the interest upon which should constitute a part of the net income of the estate for distribution under the terms of the will. This is clearly indicated from the provisions of the contracts. If the income from the 17 per cent. was not to be distributed, but to accumulate for the benefit of the college, why require the college in its contracts to pay 6 per cent. interest. On the theory of defendants, the obligations could have been liquidated from the 17 per cent. without any question of interest being involved.

In other words, what occurred was this: The college was without funds to meet this $15,000 compromise and the Minnesota tax. If it had had that amount of money to pay in cash, the particular provision of the contracts in question would have been unnecessary. What the college did, being without funds, was to propose that $15,000 and the amount of the tax should be advanced from the corpus of the estate, to be paid out of the 17 per cent. annual income, and to make good the loss of interest on the 17 per cent. income 6 per cent. should be charged against the college, thus leaving the net income of the estate in the same condition as contemplated by the will, and thus avoid diminishing the fixed legacies due the son, daughter, and grandson.

We find no difficulty in similarly disposing of the thirteenth paragraph of the will, which provides that, if any of the three legatees, receiving 83 per cent. of the income under the will, shall die, "the sum or sums so lapsed shall go to and form a part of the body of my estate." The amount so lapsed simply passes into the body of the estate, to be invested and reinvested as other portions of the estate, the income of which is to be distributed under the terms of the will to the surviving legatees, in this instance to Mrs. Sherman 40 per cent., and to the grandson Mr. Bond 3 per cent., of the total income derived therefrom.

[2] It is unnecessary to dwell upon the elementary principles pertinent to the construction of wills, further than to suggest that, if the present case were sufficiently close to invade the realm of doubt, it would be the duty of the court to resolve the doubt in favor of the kindred of the testator rather than the college. This rule of construction is concisely stated in Schouler on Wills (5th Ed.) § 479, as follows: "It may be safely laid down that, of two equally probable interpretations of a will, that shall be adopted which prefers the family and kindred of the testator to utter strangers." See, also, Downing v. Bain, 24 Ga. 372; Quinn v. Hardenbrook, 54 N. Y. 83; Wood v. Mitcham, 92 N. Y. 375.

The decree is reversed, with costs to be charged as expense to the estate, and the cause is remanded, with instructions to enter a decree in conformity with the views expressed in this opinion.