HILTON v. KINSEY et al.
WILLIAMS et al. v. KINSEY et al.
LITTLE SISTERS OF THE POOR et al.
v. KINSEY et al.

Nos. 10420, 10421, 10422.

United States Court of Appeals,
District of Columbia Circuit.

Decided Nov. 16, 1950.

William T. Hannan, Washington, D. C. (Richard W. Galiher, Washington, D. C., on the brief), for appellant Lucille H. Hilton.

Julius Aronoff, Washington, D. C. (J. Johnstone Muir, Washington, D. C., on the brief), for appellants Charles Lee Williams and National Savings & Trust Co.

Arthur J. Phelan, Washington, D. C., for appellant The Little Sisters of the Poor.

Richard H. Wilmer and John H. Pickering, Washington, D. C., on the brief for appellant The Washington Home for Incurables.

Arthur G. Nichols, Jr., Washington, D. C., for appellee Mary Elizabeth Campbell Kinsey.

Llewellyn C. Thomas, Washington, D. C. (G. Bowdoin Craighill, Washington, D. C., on the brief), for appellee American Security & Trust Co.

Before EDGERTON, PROCTOR, and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

These appeals present questions concerning the construction of the will and codicil of James H. Hilton. The testator, by a will dated September 7, 1900, after providing for one specific legacy to his son, Samuel, gave the residue of his estate to his wife, Mary, and his two other children, Franklin and Catharine, share and share alike. Subsequently, testator's wife, Mary, died, and because of this he prepared a so-called codicil, dated October 7, 1912. In this instrument he provided that his property should be collected by Robert L. O'Brien and invested and reinvested for the following purposes:

"I bequeath to my son, J. Franklin Hilton and to my daughter Catharine S. Hilton, both to have an equal share of the interest only from the proceeds of the estate except as shown in regard to the sum to be invested for and after the following bequests are provided for:

"To my eldest son Samuel L. Hilton I bequeath, in lieu of the rent as shown.

in the foregoing will, the interest derived from the investment of five (5) thousand dollars only, during his life, unless he shall have offspring.

■ "To my niece, Sarah C. Hilton, I bequeath the interest derived from the investment of four (4) thousand dollars only, during her life.

■ "To my stepdaughter, Mrs. John H. Burch, I bequeath the interest of three (3) thousand dollars only, during her life.

■ "At the death of one or all of those named to receive interest from a definite sum invested of the estate, his or her share of the sum invested is to be divided equally and paid to my son, J. Franklin Hilton, and to my daughter, Catharine S. Hilton; and in case of either [sic] of these two, the one living is to be paid the entire amount of interest of both from the income of the estate; and in case both should die before the other devisees named, those living are to be paid their interest until their death; when all have died, the income from the estate is to be paid as herein provided.

■ "I bequeath to my faithful servant, Mary Thomas, provided she remain in my employ until my death, three (3) hundred and sixty dollars to be paid to her in instalments of sixty (60) dollars every six months, or ten (10) dollars per month, as she may prefer; should she die before the full amount is paid, the balance due her is to be used towards defraying her funeral expenses.

■ "The money to be paid my son from the War Department beneficial association at my death, should it survive me, I request him to pay for Masses to be said at St. Stephen's Church, out of it until fifty (50) dollars shall have been paid; the balance to be turned over to Robert L. O'Brien to help defray my funeral expenses.

■ "In case my son, J. Franklin Hilton, or my daughter, Catharine S. Hilton, should have any offspring, said offspring, if of J. Franklin Hilton, shall be entitled to his interest after his death, and if my daughter, Catharine S. Hilton, should have any offspring, such offspring shall be entitled to her interest after her death.

■ "In case my son, Samuel L. Hilton, should have any offspring, such offspring shall be entitled to his interest after his death.

■ "Should those enumerated as devisees have no children, then the money of the estate must be continually invested and the interest therefrom applied by the best method to the relief of the respectable, indigent and destitute widows worthy of aid, over fifty-eight (58) years of age, preferably the eldest, born in the District of Columbia, of the white race, to alleviate their condition as far as it will go, for fifteen (15) years; at the expiration of said time the money of the estate is to be divided and paid over to the institution of the Little Sisters of the Poor and the Home for Incurables of Washington, D. C., each to have an equal share." (Paragraph numbers added.)

The testator died in 1919. Those named as beneficiaries died as follows: Sarah C. Hilton (par. 3) on December 22, 1931, intestate; Mrs. John H. Burch (par. 4) on June 18, 1934, testate; J. Franklin Hilton (pars. 1, 5, 8) on April 18, 1941, testate, without having had offspring; Samuel L. Hilton (pars. 2, 9) on January 30, 1944, testate, without having had offspring; and Catharine S. Hilton (Mrs. Catharine S. Hilton Campbell) (pars. 1, 5, 8) on July 27, 1947, intestate, and survived by her daughter, Mary Elizabeth Campbell Kinsey, an appellee here. Upon the death of Catharine S. Hilton, the American Security & Trust Company, substituted trustee, instituted proceedings in the District Court for construction of the will and codicil. Judgment on rehearing was entered in the District Court by Chief Judge Laws, holding that the codicil did not revoke the will, that Mary Elizabeth Campbell Kinsey was entitled to the entire corpus of the estate, and that the $12,000 set aside in paragraphs 2, 3, and 4 for payment of interest to named devisees for life should be paid as follows: $3,500 to Lucille Hilton as executrix of J. Franklin Hilton, and $8,500 to the estate of Catharine S. Hilton.

From this decision the charities appeal, contending that they are entitled to one-half of the corpus of the estate. Charles Lee Williams, as residuary legatee and as executor of Samuel L. Hilton, appeals, and seeks one-third of the corpus of the estate. Lucille Hilton, executrix and residuary legatee of J. Franklin Hilton, also appeals, seeking one-third or at least one-sixth of the corpus of the estate, and also the sum of $6,000, being half of the amount set aside for named devisees.

## I.

Counsel for all parties to this appeal agree, contrary to the conclusion of the trial court, that the codicil of October 7, 1912, revoked the will of September 7, 1900. We share this view. The codicil makes a complete and entirely different disposition of testator's property. Whether, as a matter of law, it effectively disposes of all that property is immaterial. Where a second instrument "purports to dispose of testator's entire estate * * * the second instrument revokes the gifts in the first." 4 Page, Wills § 1580, p. 493 (Lifetime Ed.). Accordingly, we regard the codicil as controlling.

## II.

Appellants Hilton and Williams argue that the codicil must be interpreted to make no final disposition of the corpus of the estate in the event that issue were born to the named devisees (Franklin and Catharine), and that it is violative of the rule against perpetuities. On that basis, as heirs of testator's children, Franklin and Samuel, they seek an adjudication that each is entitled to one-third of the corpus. They contend that after creating life estates in his children in the corpus the testator created a further interest in the corpus in violation of the rule, by providing: "[Par. 5] * * * when all have died, the income from the estate is to be paid as herein provided. * * * [Par. 8] In case my son * * * or my daughter * * * should have any offspring, said offspring, if of J. Franklin Hilton, shall be entitled to his interest after his death, and if my daughter * * * should

have any offspring, such offspring shall be entitled to her interest after her death."

Appellants argue that "offspring," as here used, means "issue," "descendants." They further contend that "interest" means either "income" or "share," and that under either meaning the above-quoted clause is an attempt to create an indefinite succession of life estates. They argue that the "share" of Catharine S. Hilton was only a life estate and that under paragraph 8 Catharine's children, if any, and her children's children, if any, *ad infinitum*, would take successive life estates.

■ We agree with appellants that if the instrument attempted to make the income from the estate payable to testator's children for life and then to create life estates in the children's offspring, if there be any, for an indefinite number of generations, it would violate the rule against perpetuities. In such a case the gift is void and the property descends under the laws of intestacy. D.C.Code (1940) § 45—102.

■ But, although appellants' contentions are not without plausibility, the interpretation they suggest does not appear to us to comport with what the testator intended. "The law in this jurisdiction, as well as in all the states of the United States, is that the intention of the testator is the basic and fundamental rule in the construction of wills, and the intention should be determined by construction of the whole will and not from detached paragraphs; and where the intention is apparent, it should be given effect—and this is true—even though to do so involves the rejection of the literal meaning of particular words." Walker v. Thomas, 64 App.D.C. 148, 149-150, 75 F.2d 667, 668-669, 99 A.L.R. 713. "In order to reach this end words may be supplied and omitted and sentences transposed." Farrar v. Bingham, 68 App.D.C. 93, 95, 93 F.2d 252, 254. The testator's intent in this case is not easy of determination. The codicil was ineptly drawn. Opinions can quite reasonably differ as to its meaning. But we consider that a fair and sensible interpretation is possible.

■■ We think the testator used "offspring" in paragraph 8 to mean "children," and did not intend to distinguish between the two expressions. It is true that legalistically " 'offspring' is said to be synonymous with issue * * * " and includes "lineal descendants, however remote in degree."[1] But the "context, the entire will, * * * may modify this primary meaning. * * * It may be synonymous with 'children.' If the gift would fail if 'issue' meant descendants generally, it will be construed as equivalent to 'children.' "[2] Nontechnically "offspring" is often used synonymously with "children," and the draftsman here was no technician. The codicil provides, in paragraph 8, that if Catharine and J. Franklin have "offspring," their offspring are to take, and, in paragraph 10, that if Catharine and J. Franklin die without having had "children," the charities are to receive the corpus. These dispositions are alternative and show that the testator used "offspring" and "children" as equivalents. Further, we do not think that the codicil manifests an intent to tie up the estate indefinitely. Certainly we should not reach that result and hold the codicil at least partially invalid when another interpretation, consistent with our appraisal of the testator's intent, is possible. It is long established that all presumptions are in favor of the validity of a will as against the contention that it violates the rule against perpetuities. Shoemaker v. Newman, 62 App.D.C. 120, 65 F.2d 208, 89 A.L.R. 1034.

Nor do we think, as appellants suggest, that "interest," as used in paragraph 8, means "income"; we think that here "interest" is used as synonymous with "share." It is true that in other portions of the codicil the testator used the word "interest" to mean "income." But the same word may be used in the same instrument in several different meanings. In re Jaycox' Will, 233 App.Div. 67, 251 N.Y.S. 573, affirmed 258 N.Y. 587, 180 N.E. 344. The New York court there held the word "interest" to mean "income" in one part of a will and "share" in another part.

The court said: "The word 'interest' does not mean 'income' necessarily, but may mean, according to Webster's New International Dictionary, 'a right, title, share or participation in a thing,' and that definition precedes the other." 251 N.Y.S. at 575. In the case now before us, in every previous use of the word "interest" in the codicil, when the testator meant it as "income," he coupled it with such qualifying words as "only," "derived from the investment," "during her life," "from a definite sum invested," "from the income of the estate," and "until their death." Significantly, no such language is used here. Appellants refer back to the income provision of paragraph 5 as controlling the disposition in paragraph 8. We think a logical construction of "when all have died the income of the estate is to be paid as herein provided" (par. 5) is that it refers to paragraph 10, dealing with the contingent remainder to the charities. The income provision is effective only "when all have died," and the contingency occurs only "should those enumerated as devisees have no children."

■ Appellants argue, however, that even if "interest," as used in paragraph 8, does mean "share," the share of appellee's mother, Catharine S. Hilton, was only a life estate. We think that in paragraph 8 the testator meant her "share" of the corpus. We consider that in that paragraph the testator intended to make disposition of the corpus of the estate in the event his children should die leaving children. The construction urged by appellants would mean that testator made no provision for that event. One of the well-established canons of construction is that a testator is presumed to die testate as to all his property. Bunker v. Jones, U.S. App.D.C., 1950, 181 F.2d 619. Canons of construction are, of course, merely rules of interpretation derived from long experience. They are not absolute, and cannot supply deficiencies when there is a complete lack of manifestation of intent. But we think that here the testator in-

1. 3 Page, Wills § 1027, p. 157 (Lifetime Ed.).

2. Id. at p. 155.

tended that the corpus was to go to his children's children, if any there were.

We may note that even if the word "interest" is interpreted to mean "income," still no succession of life estates would be created, because a gift of "income" without limitation as to time carries with it the corpus. Restatement, Trusts, § 128, Comment (b); 3 Page, Wills, § 1148, p. 419 (Lifetime Ed.). Here there was no limitation in the devise of "interest" to testator's grandchildren.

Appellee Mary Elizabeth Campbell Kinsey is thus entitled to at least that half of the corpus designed to go to the children of Catharine S. Hilton.

## III.

*Disposition of J. Franklin Hilton's share.* With respect to this portion of the estate, each party makes a claim, dependent upon a different construction of the codicil. The charities contend that upon the death of Franklin without issue this share must be put in trust for them. Appellee Kinsey and the individual appellants contend that the gift to the charities was contingent, because they were to take only "should those enumerated as devisees have no children"; that since appellee Kinsey is the child of a named devisee, the gift to the charities must fail. The charities, however, urge that this construction, if applied in all contingencies, would lead to absurd results, and that therefore this reading does not express the testator's intent. For example, they argue that if Samuel S. Hilton should have children, under the above construction the gift over would fail even though Samuel and his issue, if any, were never entitled to more than $5,000. They suggest that paragraph 10 should be treated as if it provided: "Should those enumerated as devisees, *that is, J. Franklin Hilton, Catharine S. Hilton, or Samuel Hilton,* have no children, then the money of the estate *from which they have been receiv-*

*ing income*" must be paid to the charities. (Italicized words read in.) In other words, they say that each devisee's share must be treated separately; that to bar the charities completely a child must be born to each devisee. They consider they are strengthened in this by the terms of the codicil in that it provided for a cross-remainder as to income between Franklin and Catharine,[3] but included no express cross-remainder between their children in the corpus.

▮▮ We agree with the charities that "those enumerated as devisees" cannot include the recipients of small, individual bequests from the testator. We think it is limited to J. Franklin and Catharine, and does not include Samuel, as the disposition of his share, the $5,000, was to be governed by the specific provisions of paragraphs 5 and 9. We must conclude that the charities were only to take if "those enumerated as devisees [Catharine and J. Franklin] have no children." Contrary to the charities' further contention, however, we find nothing in the language of the codicil that supports the position that each share must be treated separately and independently of the others. And we think that the codicil manifests an intent that the charities take only if there were no grandchildren. Apart from the general tenor of the codicil, "It may be safely laid down that of two equally probable interpretations of a will, that shall be adopted which prefers the family and kindred of the testator to utter strangers." Schouler, Wills § 479 (5th ed.). Accord: 2 Page, Wills § 928 (Lifetime Ed.); Sherman v. American Security & Trust Co., 57 App. D.C. 273, 20 F.2d 446 (charity involved). The condition precedent that Catharine and J. Franklin have no children did not occur, and the charities are not entitled to take any part of the estate. Thus, the argument that there is no express cross-remainder as to the corpus does not aid

---

3. The charities also strongly contend that the provision for a cross-remainder between Franklin and Catharine refers only to the interest from the $12,000 (under paragraphs 2, 3, and 4). We are unable to reach such a conclusion in view of the plain language of paragraph 5 that the one living "is to be paid the *entire amount of interest of both from the income of the estate.*" (Italics added.)

the charities, for its acceptance leads, at most, to a holding of intestacy as to J. Franklin's share.

The individual appellants Hilton and Williams urge this latter point as a secondary argument in their behalf. They contend that even if the codicil is interpreted to vest Catharine's share in the appellee Kinsey, there is still no cross-remainder of the whole corpus. The cross-remainder of income only between the parents cannot, they say, be construed to carry with it the whole corpus and therefore, after Franklin's death without issue, his share must pass by intestacy.

■ We think this contention is answered when the general plan of the testator for the disposition of his property is considered. First, it is clear that the individual appellants Hilton and Williams were not intended to share in the portion of the estate here in issue. Second, it is equally clear that the children of J. Franklin and Catharine, if any, were to be the ultimate beneficiaries of the residuary estate. Under similar circumstances it has been held that although testator's plan is incompletely expressed, it may be implied from the contents of the will as a whole and a cross-remainder of the corpus read into the will. See Boston Safe-Deposit & Trust Co. v. Coffin, 152 Mass. 95, 25 N.E. 30, 8 L.R.A. 740; Buist v. Williams, 88 S.C. 252, 70 S.E. 817; cf. Williams v. Jones, 166 N.Y. 522, 60 N.E. 240. In Boston Safe-Deposit & Trust Co. v. Coffin, supra, the testator, as to one portion of his estate, made the following disposition: The income to grandchildren A, B, and C for life; upon the death of A, or B, or C without issue, the income to be divided among the survivors; upon the death of A, or B, or C with issue, that issue to take the portion of the estate of which the grandchild had enjoyed the interest and income; if A, B, and C all die without issue, the principal to go to the other children of the testator. Both A and B predeceased C, dying without issue. C enjoyed the entire income until his death. He died with issue. It was argued that the issue of C was entitled to the original amount from which C received the income,

namely, one-third of the corpus, the remaining two-thirds passing by intestacy. The court rejected this contention, holding that there was an implied cross-remainder of the two-thirds to the issue of C, and, accordingly, that C's children took the entire corpus.

There is a striking similarity between that case and the present one. Franklin predeceased Catharine. Subsequent to his death she was clearly entitled to, and actually received for a period of six years until her death, the income from the entire corpus of the estate. Prior to her death her interest in the estate was not the life income from half the corpus, but the income from the whole. And the gift to the children was to be not a half, but the whole interest of the parent. Therefore, we hold that the provision for a cross-remainder as to the income between the parents had the effect of increasing the share of the children of one should the other die without children.

IV.

■ *Disposition of certain other bequests.* The parties agree that the language of paragraph 1 of the codicil, though inartistic, was sufficient to create a trust. This trust, in favor of J. Franklin Hilton and Catharine S. Hilton, was made subject to the payment of income for life to Samuel L. Hilton, Sarah C. Hilton and Mrs. John H. Burch. They were to have "the interest derived from the investment" of $5,000, $4,000 and $3,000, respectively, during their lifetimes. In the case of Samuel, the language of paragraph 2 is unique in that it adds the proviso "unless he shall have offspring." The meaning of this phrase becomes clear when we incorporate the terms of paragraph 9; the phrase would then read "unless he shall have offspring, in which event such offspring shall be entitled to his interest after his death."

The contingency so envisaged did not occur. Samuel L. Hilton died without issue on January 30, 1944, three years after the death of J. Franklin Hilton and three and one-half years prior to the death of Catharine S. Hilton. We agree with the

trial court that on Samuel's death Catharine became entitled to all of the corpus of the sum of $5,000 invested for Samuel's benefit. This was effected, in our view, by the first clause of paragraph 5. That clause provided that upon the death of Samuel Hilton without offspring the sum of $5,000 invested for him "is to be divided equally and paid to my son, J. Franklin Hilton and to my daughter, Catharine S. Hilton." Standing alone, that clause might not have required survival as a condition of taking.[4] But it is followed by a clause which says that "in case of [the death of][5] either of these two [J. Franklin Hilton and Catharine S. Hilton], the one living is to be paid the entire amount of interest of both from the income of the estate * * *." Reading the two clauses together, in the light of the entire codicil, we consider that the testator did not intend to have payments made under paragraph 5 to the estate of one of his deceased children: his desire was to benefit the survivor. We think that in its context the first clause of paragraph 5 meant payment to both children if both were then living, or if one had died, payment to the survivor. As Franklin was deceased by the time Samuel Hilton had died, Catharine S. Hilton was entitled to the entire $5,000.

With regard to the $4,000 in which Sarah C. Hilton was bequeathed a life interest (par. 3) and the $3,000 in which Mrs. John H. Burch was bequeathed a life interest (par. 4), there can be no dispute. Sarah C. Hilton and Mrs. John H. Burch both predeceased J. Franklin and Catharine S. Hilton. Accordingly, under paragraph 5, the $7,000 should be divided equally between J. Franklin Hilton and Catharine S. Hilton.

The trial judge correctly awarded $8,500 to Mary Elizabeth Campbell Kinsey ($5,000 plus $3,500), and $3,500 to Lucille Hilton.

## V.

Much of the foregoing discussion may be recapitulated by placing in juxtaposition the provisions of paragraphs 5, 8, and 10 of the codicil. Combining the language of these three paragraphs so as to preserve to the maximum the language used by the testator himself, we reach the following:

"At the death of one or all of those named to receive interest from a definite sum invested of the estate, his or her share of the sum invested is to be divided equally and paid to my son, J. Franklin Hilton, and to my daughter, Catharine S. Hilton [if both are living]; and in case of [the death of] either of these two, the one living is to be paid the entire amount of interest of both from the income of the estate [par. 5]; [provided that] *in case my son J. Franklin Hilton, or my daughter, Catharine S. Hilton, should have any offspring, said offspring, if of J. Franklin Hilton, shall be entitled to his interest after his death, and if my daughter, Catharine S. Hilton, should have any offspring, such offspring shall be entitled to her interest after her death* [par. 8]; and in case both [J. Franklin Hilton and Catharine S. Hilton] should die before the other devisees named [Samuel L. Hilton, Sarah C. Hilton, Mrs. John H. Burch], those living are to be paid their interest until their death; when all have died [should J. Franklin Hilton and Catharine S. Hilton die without children], the income from the estate is to be paid as herein provided for [par. 5], [namely,] *should those enumerated as devisees [J. Franklin Hilton and Catharine S. Hilton] have no children, then the money of the estate must be continually invested and the interest therefrom applied by the best method to the relief of the respectable, indigent and destitute widows worthy of aid, over fifty-eight (58) years of age,*

---

**4.** See Restatement, Property § 260: "In a limitation purporting to create a remainder or an executory interest, the fact that the only words of gift to the intended taker thereof consist of a direction to divide and pay over, or to convert, divide and pay over, at the end of the created prior interests or at some other future date is not a material fact in determining the existence of a requirement of survival to the date of distribution."

**5.** All parties agree that these words should be inserted at this point.

*preferably the eldest, born in the District of Columbia, of the white race, to alleviate their condition as far as it will go, for fifteen (15) years; at the expiration of said time the money of the estate is to be divided and paid over to the institution of the Little Sisters of the Poor and the Home for Incurables of Washington, D. C., each to have an equal share* [par. 10]." (Parts in brackets added; parts in italics derived from paragraphs 8 and 10.)

The quoted language, it seems to us, shows that the testator's fundamental purpose was to provide for Franklin and Catharine during their lifetimes, and for their children thereafter. The charities were to take only if neither Franklin nor Catharine left children. If there were children or but a single child, the testator intended those children—or that child—to take to the exclusion of others.

The judgment of the District Court, accordingly, is affirmed.