ESTATE OF WALTER O. CRITCHFIELD, DECEASED, CENTRAL NATIONAL BANK OF CLEVELAND, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57975. Filed June 30, 1959.

*Robert T. Green, Esq.*, for the petitioner.
*William O. Allen, Esq.*, for the respondent.

## OPINION.

HARRON, *Judge:* The first question is whether, under section 811(j)[1] the value at which the 184 shares of stock of the Shelby Company shall be included in the decedent's gross estate is their fair market value, $65 per share, on November 8, 1951, when the shares were sold to the widow, or $58 per share, the price approved by the Probate Court under the widow's election to purchase the shares from the estate.

---

[1] SEC. 811. GROSS ESTATE.

(j) OPTIONAL VALUATION.—If the executor so elects upon his return (if filed within the time prescribed by law or prescribed by the Commissioner in pursuance of law), the value of the gross estate shall be determined by valuing all the property included therein on the date of the decedent's death as of the date one year after the decedent's death, except that (1) property included in the gross estate on the date of death and, within one year after the decedent's death, distributed by the executor (or, in the case of property included in the gross estate under subsection (c), (d), or (f) of this section, distributed by the trustee under the instrument of transfer), or sold, exchanged, or otherwise disposed of, shall be included at its value as of the time of such distribution, sale, exchange, or other disposition, whichever first occurs, instead of its value as of the date one year after the decedent's death, * * *

Petitioner contends that he was required by order of the Probate Court to sell the stock at the appraised value of $58 per share and that, therefore, the clause in section 811(j), "shall be included at its value as of the time of such distribution, sale, exchange, or other disposition," should be construed for the purpose of this case to mean the amount per share which the executor received for the stock. He argues that he took title to the block of 1,580 shares subject to the right of the surviving spouse under section 10509–89 of the Ohio General Code [2] (Lifetime ed., which applied to estates of decedents who died before October 1, 1953) to elect to exercise an option to purchase a portion of the stock; that such option had a zero value at the time of the decedent's death; that the option could not be exercised until the appraisement of the estate had been approved by the Probate Court; and that the sale of the stock under the Ohio statute should relate back to the value at the date of death. He contends, in effect, that the Commissioner is bound by the value which was approved by the Probate Court, under the Ohio statute, and that, otherwise, the executor is placed in the peculiar position of having to include the stock in the gross estate at a higher value than, under the Ohio statute, he was, in this instance, permitted to receive under an involuntary sale. Petitioner does not cite any authority in support of the construction of section 811(j) for which he urges our approval.

We agree with the respondent that under section 811(j) the property in question is includible in the gross estate at its fair market value on the date of the sale, $65 per share. There is no merit to the contentions of the petitioner.

The executor elected in the estate tax return to have all of the property of the decedent valued "in accordance with values as of a date or dates subsequent to the decedent's death as authorized by section 811(j) of the Internal Revenue Code." Section 811(j) provides that if the executor so elects in the return, the gross estate shall be valued as of the date 1 year after the decedent's death, except that property included in the gross estate which, within 1 year after death, is sold, exchanged, or otherwise disposed of shall be included at its

---

[2] Ohio General Code: Sec. 10509–89. Right of surviving spouse to purchase property at appraised value; procedure. At any time within one month after the approval of the inventory, the surviving spouse, if any, whether acting as executor or administrator, or not, shall have the right to purchase the following property, if left by the decedent and if not specifically devised or bequeathed:

* * * * * * *

(b) Stocks, bonds and other securities listed on an approved stock exchange, as defined in sub-section 4 of section 8624–3 of the General Code, at the market price at the time of purchase.

(c) Any other real or personal property of the decedent, not exceeding, with the mansion house and land used in conjunction therewith and such household goods as the spouse may elect to purchase, one-third of the gross appraised value of the estate, at the appraised value as fixed by the appraisers.

value as of the time of such sale, exchange, or other disposition. The 184 shares of stock in issue were sold, exchanged, and distributed to the surviving spouse on November 8, 1951, and on that date the fair market value of the stock was $65 per share. Section 811(j) clearly provides that where the optional valuation date is elected, the value of property at the time of its sale, exchange, or distribution, whichever occurs first, must be in lieu of any other value. There is no warrant in the statute for using the date-of-death value of the stock for which claim is made by petitioner, who assumes that such value was $58 per share.[3]

In section 81.11 of Regulations 105, page 32, it is provided that, "Property, in the case of a sale, exchange, or other disposition within the 1-year period, is to be valued as of the date when it ceases to form a part of the estate, that is, the date when the title passes as the result of a sale, exchange, or other disposition. The terms 'distributed,' 'sold,' 'exchanged,' and 'otherwise disposed of' comprehend all possible ways by which property may be separated or passed from the gross estate." The transfer, or sale, of the stock in question to the decedent's surviving spouse under the procedure allowed by the provisions of section 10509–89 of the Ohio General Code, constituted either a sale, or an exchange, or other disposition under the provisions of section 811(j). As a matter of fact, it appears that the stock was transferred to the widow in lieu of $10,000 to which she was entitled for her maintenance during the first 12 months following the death of the decedent, and in this respect, the transfer appears to have been a disposition of the stock in lieu of payment of $10,000 in cash, and in lieu of the executor's selling property in the gross estate to a stranger for the purpose of obtaining $10,000 in cash. Under the regulation, the petitioner's contention cannot be sustained. Considerable weight is to be given to the regulation in view of the fact that it has been in existence without substantial change since 1936. *Helvering* v. *Winmill*, 305 U.S. 79. Furthermore, even if it were to be assumed that $58 per share was the fair market value of the stock at the date of the decedent's death, as is stated in the appraisers' report, it would be clearly contrary to the provisions of section 811(j) to include the stock in the gross estate at such value.

It is immaterial and irrelevant that the executor received only $58 per share for the stock and that the widow was allowed to purchase the stock for that price. In the following cases involving amalagous situations there was rejected a similar claim that the value of property for inclusion in a gross estate, under Federal estate tax law, should be determined on the basis of a transaction which oc-

---

[3] It is assumed by petitioner that the date-of-death value of 184 shares was $58 per share, the appraised value per share as of that date of a block of 1,586 shares. The evidence establishes that on July 22, 1951, the date of death, the fair market value of 184 shares was $65 per share.

curred after the decedent's death, rather than by the fair market value of the property at the date required by section 811 or 811(j). See *Claire Giannini Hoffman*, 2 T.C. 1160, affirmed sub nom. *Giannini v. Commissioner*, 148 F. 2d 285, certiorari denied 326 U.S. 730; *Estate of George Marshall Trammel*, 18 T.C. 662; and *Estate of Robert R. Gannon*, 21 T.C. 1073. The rationale of these cases is that property must be included in the gross estate at its full fair market value, even though the executor may be bound to sell the property after the decedent's death at a lesser price.

It is noted, further, that the widow's application to the Probate Court to purchase the stock for $58 per share was approved by that court in a nonadversary proceeding. We have held frequently that determinations made in a nonadversary proceeding by a local court are not binding upon this Court in determining questions under the provisions of the applicable Federal statute. *Estate of Arthur Sweet*, 24 T.C. 488, affd. 234 F. 2d 401, certiorari denied 352 U.S. 878; *Estate of Ralph Rainger*, 12 T.C. 483, affd. 183 F. 2d. 587, certiorari denied 341 U.S. 904; *James S. Reid Trust*, 6 T.C. 438.

It is held that the stock in question is includible in the gross estate at the value of $65 per share.

The petitioner contends, next, that the estate is entitled to a deduction under section 812(e) [4] in the amount of $1,288, which represents an increment of $7 per share, the difference between the appraised value and the fair market value per share of the 184 shares of stock. Petitioner's theory is that the spouse acquired her option to purchase the stock from the estate by reason of the death of her husband; that the option constituted an interest in property in the estate; and that since the respondent allegedly has included an increment of $7 per share in the gross estate (according to petitioner's view), then it follows that the spouse received an interest in property having a value of $1,288 from and through the estate by reason of the death of her husband. The petitioner cites no authority in support of this theory, and we find none.

---

[4] SEC. 812. NET ESTATE.

(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

(1) ALLOWANCE OF MARITAL DEDUCTION.—

(A) In General.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; * * *

Petitioner's theory represents a novel attempt to inject section 812(e) into a situation to which it was not intended to apply. Section 812(e)(1)(A) deals with any interest in property which passes or has passed from the decedent to his surviving spouse. In this case, the decedent left a will and its provisions determine what passed from the decedent upon his death to his surviving spouse. The decedent directed his executor to pay his debts and funeral expenses; he bequeathed the family residence to his surviving spouse and gave her all of the contents of the home, his automobile, and all his personal effects; he directed the executor to pay from the residue of the estate all estate and inheritance taxes; he devised all of the rest of the residue to the Central National Bank of Cleveland in trust; and he named his wife the income beneficiary of the trust for life.

Under Ohio law, the widow was entitled to receive from the estate money to provide her support for 1 year. The appraisers of the estate certified that $10,000 in money was sufficient for 1 year's support. The cash in the estate amounted to $21,935.13. When the widow made an election under section 10509–89 of the Ohio General Code to purchase the 184 shares of stock of the Shelby Company from the estate, the Probate Court directed the executor to apply the year's allowance for support and amounts due the widow as exempt from administration to the price she was to pay for the stock.

The widow's right to receive money for 1 year's support and her right to purchase shares of stock from the estate within 1 month after the approval of the inventory were founded in Ohio statutes, and such widow's rights were related to and involved in the administration of the estate. Under section 10509–89 of the Ohio General Code the right given to the surviving spouse was a right to purchase certain specified property. The provisions of section 10509–89 deal with property of the decedent which is not specifically devised or bequeathed. We think it is abundantly clear that the right of a surviving spouse, under a statute, to purchase property from the estate is not an interest in property which passes from the decedent to his surviving spouse within the meaning and intendment of section 812(e)(1)(A), and that, therefore, petitioner is not entitled to a marital deduction under that Code provision.

Furthermore, even if it could be held that such interest in property as is described in section 812(e)(1)(A) were involved here, and whatsoever kind of interest decedent's widow had under the Ohio statute, the interest constituted a terminable interest within the meaning of section 812(e)(1)(B), and, therefore, fails to qualify for a marital deduction. The decedent's will provides that upon the death of his widow, the corpus of the testamentary trust is to be divided into 5 equal shares, each of which is to be distributed to five named individuals. Therefore, under the decedent's will, the 184 shares of

stock, if they had remained in the gross estate and had been distributed to the trustee of the testamentary trust, would eventually have passed to persons other than the surviving spouse. Where a surviving spouse elects to take property against the will, the interest received by her is considered to have passed only if it otherwise qualifies for the marital deduction. Regs. 105, sec. 81.47a(f). An interest in an estate which passes to a surviving spouse pursuant to State law will qualify for the marital deduction only if, in the event of her death as of any moment following the decedent's death, it will survive as an asset of her estate. Rev. Rul. 55–419, 1955–1 C.B. 458.

In *Jewell* v. *Chiles*, 37 Ohio Op. 33, 79 N.E. 2d 710 (1947), an issue was whether the right of the surviving spouse to purchase assets at their appraised value under section 10509–89, Ohio General Code, was personal to such spouse, or whether, in the event of her death after filing application but before completion of the action, the right to purchase survived and passed to her heirs at law, devisees, or personal representatives. The Probate Court held:

> When the surviving spouse of a decedent filed a petition to purchase real estate under Section 10509–89, G.C., and dies before the action is completed or conveyance made, such right of action abates and the estate of the first decedent will be administered as if no petition to purchase by the surviving spouse had been filed. 79 N.E. 2d at 711.

Although section 10509–89, Ohio General Code, contains no express provision as to whether the surviving spouse's right thereunder would survive her death, the Ohio Revised Code, effective October 1, 1953, does contain such express provision. In enacting the Revised Code, it was the intent of the Ohio General Assembly not to change the law as expressed in the General Code. Sec. 1.24, Ohio Rev. Code. Section 2113.38 of the Revised Code provides:

> The death of the surviving spouse prior to the filing of the court's entry fixing the terms of payment for property elected to be purchased shall nullify the election with respect thereto. Such property, whether real or personal, shall thereafter be free of the right granted in this section.

Section 2113.38 of the Revised Code also provides:

> The application or petition provided for in this section shall be filed any time within one month after the approval of the inventory * * *. Failure to file such application within such time nullifies the election with respect to the property required to be included therein and such property, whether real or personal, shall thereafter be free of the right granted in this section.

Whatever "interest," therefore, that the surviving spouse may acquire by virtue of the Ohio statute, it is apparent that it will terminate upon a lapse of time (1 month after approval of the inventory), or upon the occurrence of an event or contingency (death of the surviving spouse prior to entry of the Probate Court's order). It must be concluded here, that in either event, an interest in the 184

shares of stock would pass to the remainder beneficiaries, without consideration, and that by reason of such passing the remainder beneficiaries could possess or enjoy a part of such property after the termination or failure of the surviving spouse's "interest." Therefore, the surviving spouse's right to elect to purchase certain assets of the estate at their fair market value at the time of the exercise of the option is clearly a terminable interest as defined by section 812(e) (1)(B), and no deduction can be allowed with respect thereto.

*Decision will be entered for the respondent.*