**Joan Bain NICODEMUS et al.,**
**Appellants,**

v.

**Lillian Wall BAIN, Appellee.**
**No. 17830.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 30, 1963.

Decided Jan. 7, 1965.

Petition for Rehearing En Banc and Petition for Rehearing before the Division Denied May 6, 1965.

Mr. J. L. Monarch, Washington, D. C., for appellants.

Mr. Dennis Collins, Washington, D. C., with whom Mr. William J. Fitzgerald and Miss Nelle L. Ingels, Washington, D. C., were on the brief, for appellee.

Before FAHY, WASHINGTON and Mc-GOWAN, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from an order of the District Court in an action brought by an executor for construction of a provision of a will.

In Paragraph 3 of the will the testator gave, devised, and bequeathed to his wife "all her statutory rights in my real and personal property wheresoever the same may be situate or located at the time of my death." In Paragraph 9 of the will the testator gave, bequeathed, and devised the entire residue of his estate to his wife and his two children (a son and a daughter)—

"share and share alike, with the proviso that if my said wife should predecease me, then her share shall lapse and the residue of my estate shall be distributed equally between my two children. Should either one or both of my children predecease me, however, the issue of my predeceased child shall take in their place and stead, per stirpes and not per capita."

The case centers on the construction to be given to the language of Paragraph 3, concerning "statutory rights."[1]

Facts alleged in the complaint and admitted were that the decedent's two children are children of a former first marriage; that on December 28, 1956, the decedent (at the age of 76) married his second wife, who survived him and is the intended beneficiary of Paragraph 3; that he was a resident of the District of Columbia; that he died on October 20, 1960, at the age of 80; and that the will was executed about 9 months before his death.

The case first came before the District Court on cross-motions for summary judgment filed by the widow and the two children. On April 22, 1963, the District Court, without hearing any evidence tending to illuminate or explain the intention of the testator with respect to Paragraph 3 (or any other provision) of the will, found as a matter of law, without opinion, that Paragraph 3 of the will—

"declares a pecuniary bequest to * * * [the widow] of the value of the share in the real and personal estate which she would have taken had the decedent died intestate"

and decreed that—

"(a) In addition to one-third of the residue under paragraph 9 of the will, the widow is entitled to the value of an intestate share in personalty, pursuant to D.C.Code, Title 18, § 703.

"(b) That the decedent left real estate in the District of Columbia, Arizona, Tennessee and Pennsylvania in which the widow is also entitled to the value of an intestate share"

in accordance with named statutes.[2] The testator's two children appealed.

This court heard argument, but found the record inadequate, in the absence of evidence as to the testator's intention with regard to Paragraph 3 of the will, to permit proper review of the District Court's construction of that paragraph. Accordingly, we remanded for an evidentiary hearing as to the intention of the testator. After holding the hearing, the

---

1. Paragraphs 4 through 8 of the will provided for small monetary legacies to named grandchildren, great grandchildren, a brother, a sister, and two persons named for the testator; these monetary legacies have been paid and are not here directly involved.

2. These were D.C.CODE §§ 18–101 and 18–201a (1961); ARIZ.REV.STATS., Title 14, § 201; TENN.CODE ANNO. §§ 31–601 through 31–603; and PA.CODE, Title 20, ¶ 1.2 (§ 2(1), Intestate Act of 1947).

District Court made findings of fact and conclusions of law, reaching the conclusion that the "will should finally be construed in accordance with the order" previously entered. We must now decide whether the District Court's construction accords with the testator's intention insofar as it is shown by the language used and the evidence of record.[3] We first give our views as to the meaning of the testamentary language, considered apart from any extraneous evidence, and next consider the impact of the evidence which was introduced at the hearing on remand.

## I.

■ It was stipulated that the attorney who drafted the will was a competent draftsman of wills, and the District Court found that she was an "experienced attorney specializing in probate matters and an expert draftsman of wills." Taking that to be so, and unless there is convincing evidence that the actual intention was otherwise, the language of the will must be given effect as it stands without revision, added embellishment or enlargement. In that posture, Paragraph 3 gives to the wife all the rights in the testator's real and personal property which she had under applicable statutes at the time of the testator's death.[4] This must mean that the statutes apply—with their limitations—in determining those rights. The testator died testate and the validity of the will is unchallenged. The "statutory rights" bequeathed to the widow are those which accrue to her in that situation. As will be shown, there are substantial statutory rights accruing to a widow when her husband dies testate, which do not depend on intestacy.

■ We can find no warrant for construing the testator's devise and bequest in Paragraph 3 of "all her [the widow's] statutory rights in my real and personal property" as a *pecuniary bequest* to the widow of the *value of an intestate share* in the testator's realty and personalty. Had the decedent intended that the widow have money equal to the value of the share she would have taken if there had been no will, he could easily have so provided. Instead, he did not mention payment in money[5] and he did not mention statutory rights arising upon intestacy. His failure to specify that she was to have the monetary equivalent of the statutory rights she would have had in the case of intestacy seems especially significant in light of the fact that he was then executing a will which would if valid forestall intestacy and would, unless it expressed a contrary intention, operate to cut off her right to an intestate share. The testator's silence as to intestate rights in this situation must be accorded great weight. The words the testator employed gave the widow "all her statutory rights" in his real and personal property, wherever located, and we think this necessarily means such rights as she had in his property under the controlling statutes immediately following his death, *testate*.

It is of course to be presumed that the testator included Paragraph 3 for a purpose. But Paragraph 3 as worded by him does not operate in a vacuum. In the District of Columbia at least[6] there

3. The testator appears not to have explained his intentions in writing (other than in the will) and not to have discussed the provisions of his will with anyone other than the attorney who drafted it. That attorney is now dead and her testimony is not available.

4. There can be no dispute that the will speaks as of death.

5. *Cf.* Herbert v. Wren, 11 U.S. (7 Cranch) 370, 3 L.Ed. 374 (1813), deciding that a court of chancery cannot allow a part of the purchase money of realty in lieu of dower, when the property is sold, unless all interested parties consent. And *cf.* Magruder v. Magruder, 78 U.S. App.D.C. 378, 380–381, 141 F.2d 537, 539–540 cert. denied, 323 U.S. 711, 65 S.Ct. 37, 89 L.Ed. 572 (1944).

6. The statutes of Arizona, Tennessee, and Pennsylvania, cited by the District Court, accord rights in real estate to a surviving widow where her husband dies intestate. It is not our function on this appeal to determine whether the widow may have rights given by statute in the

are rights granted to a widow by statute which accrue where there is a will. Under Section 18–201 of the D.C.Code a widow is given the right of quarantine, under Section 18–801 of the Code she is given a family allowance, and under Section 18–201a(a), enacted August 31, 1957, dower rights may accrue to her in certain circumstances. Furthermore, under Section 18–211 a widow may renounce what is given her under the will and elect to take the share of the real and personal estate which she would have taken if there had been no will. Such statutory rights are substantial in nature and all were available to the widow under Paragraph 3 and by virtue of the cited statutory provisions.[7] Thus, we do not think that a reading of Paragraph 3 in accordance with the language actually used by the testator would produce an irrational result or a result which must be rejected as obviously a provision which he could not have intended. Cf. Hilton v. Kinsey, 88 U.S.App.D.C. 14, 19–20, 185 F.2d 885, 890–891, 23 A.L.R.

2d 830 (1950); Warner v. Warner, 99 U.S.App.D.C. 80, 86, 237 F.2d 561, 567 (1956). To be sure, the widow might presumably have been entitled to certain of her statutory rights on the death of her husband in any event, whether he died testate or intestate, so that the testator's gift of them may have accomplished little or nothing as a matter of law, but the same can be said of several other provisions of the will. It does not follow, however, that the testator necessarily viewed Paragraph 3 as unnecessary or ineffective. So far as can be determined, it seems likely that the provision in question was inserted because it was believed by him to be helpful or actually needed to assure the preservation to the widow of the statutory rights she might have at his death;[8] or perhaps, as suggested by the children, to strengthen the claim of his estate, through a "bequest" of the widow's statutory rights, to a marital deduction under Section 2056(a) and (e) of the Internal Revenue Code of 1954.[9]

---

7. We understand that quarantine in the form of four months' rent ($1100) on the apartment occupied by decedent at the time of his death and a family allowance of $500 have been paid in full to the wife under Sections 18–201 and 18–801 of the D.C.Code. The record indicates that the widow has not yet asserted any claim to dower, and that she did not renounce under the will.

It is true, of course, that the widow's right to renounce devises and bequests made in the will, given her by Section 18–211 of the Code, continues for 6 months after administration is granted on the testator's estate, but this fact does not derogate from the conclusion that the right to renounce within that period was a right which became fixed and in effect at the date of the testator's death, testate. Paragraph 3 clearly encompasses this statutory right.

8. We note in this connection that Section 18–210 of the D.C.Code reads:

"Subject to the provisions of section 18–212, every devise of real estate or any interest therein, and every bequest of personal estate or any interest

realty located in those states where the owner does not die intestate.

therein, to the surviving spouse shall be construed to be intended in bar of his or her share in decedent's estate (including dower rights, if any) unless it be otherwise expressed in the will."

Section 18–212 provides that if the surviving spouse does not renounce,

"she or he shall be entitled to receive the benefit of all provisions in her or his favor in the will of the deceased spouse and shall share, in accordance with sections 18–101, 18–701, 18–702, 18–703 and 18–704, in any estate of the deceased spouse undisposed of by the will."

Neither the quarantine right under Section 18–201, nor dower rights under Section 18–201a, nor the family allowance under Section 18–801, is specifically mentioned in Section 18–212. The widow's statutory rights under these sections may thus have been thought to need protection by giving them to the wife as a provision of the will.

9. The decedent's estate was substantial. At the time the will was executed in January 1960 the law as to whether the statutory rights of a surviving spouse would form a basis for a marital deduction under Section 2056 of the Revenue

Taking the language of Paragraph 3 alone, we find no justification for rewriting or amplifying it to give the widow an intestate share in the testator's property when she has failed to renounce the will or fulfill any other conditions imposed by statute upon efforts to take as upon intestacy. We turn now to the matter of whether the language used must be so construed because the evidence shows that this in fact was the testator's intention.

## II.

The evidence in our view wholly fails to show that the testator actually intended by Paragraph 3 to give the widow the value of the rights she would have had by statute if he had died intestate, in addition to a one-third share of the residue.[10] As already noted, the decedent did not communicate his intention to any person who testified at the hearing. And no reason or motive for so preferring the widow appears. The testator was shown by the evidence to have been on good and affectionate terms with both of his children and with his wife. The wife was not shown to have been in financial need. Rather, her independent income and property were substantial, probably sufficient to care for her needs apart from any bequest, and her financial resources seem at least equal to those of the testator's son and notably more substantial than were those of the testator's daughter.

In addition, Paragraph 9 of the will suggests that there was no intention to favor the widow, other than as Paragraph 3 specifically states, over the two children. There he provided that if the widow did not survive him, the bequest to her of one-third of the residue would lapse, as would of course the bequest of her statutory rights. The children's share in the residue, on the other hand, would not lapse if they did not survive, but would go to their children (the testator's grandchildren, to whom he gave small specific legacies). The lapse provision seems most inconsistent with a view that the wife was to be preferred in a monetary way, except as allowed to her by statute. Furthermore, on the day he executed his will and subsequently, the testator acted to bring some of the insurance he carried into conformity with a one-third division of his property between his wife and children, the wife's share to lapse if she did not survive.[11]

We do not think that the acts and statements of the drafting attorney, shown by the evidence, purport to show the testator's actual intention with respect to Paragraph 3. Nor do we construe them as expressing any opinion by the attorney as to how that paragraph should be construed.

We conclude that, giving due weight to the evidence produced, the testator's choice of language for Paragraph 3 bars the view that he intended by that para-

Code appears not to have been settled. *Compare* TREAS. REG. § 20.2056(e)–1 (3) and (5) and (e)–2, promulgated June 24, 1958, by T.D. 6296, 23 FED.REG. 4539, *with* Estate of Proctor D. Rensenhouse, 31 T.C. 818, 823 (1959) and Estate of Walter O. Critchfield, 32 T.C. 844, 851 (1959). Subsection (a) of Section 2056 limits the marital deduction to property interests which "passed from" the decedent to the surviving spouse, and subsection (e) provides that a property interest "shall be considered as passing from the decedent" if, inter alia, the interest "is bequeathed or devised" by the decedent. There is evidence that the marital deduction provision had been brought to the testator's attention, and Paragraph 3 of the will may well have been framed with that in mind.

10. Expressed in percentages, the division ordered by the District Court (a one-third share in all realty and personalty plus a one-third share of the residue) would give the widow approximately 56%, and the two children 22% each, of the net estate.

11. This was accomplished with respect to one policy, but not in respect of two others as to which the testator before his death indicated to the representative of the insurance company that he desired to change the designation of beneficiaries to conform with his will. His two children divided about $20,000 of insurance proceeds after his death, in which the widow did not share.

graph to give his wife a pecuniary bequest measured by the value of the rights she would have had by statute if he had died intestate. We construe Paragraph 3 to mean that he intended his wife to have those rights in his real and personal property as were conferred upon her by statute as of the date of his death testate and which were available to her absent renunciation within the statutory period —this in addition to her share of the residue under the will.

The order of the District Court is

Reversed with directions to enter an order construing the will in a manner consistent with this opinion.

FAHY, Circuit Judge (dissenting):

All parties to the case are agreed that the will was prepared for the testator by an experienced draftsman. And though Paragraph 3 is nevertheless not altogether clear, it seems to me well nigh incredible that an experienced draftsman would have composed this provision as she did if the intention she sought to express were the wholly unnecessary one that the widow should have her statutory rights of quarantine, family allowance and renunciation, which were hers without any provision for them in the will.[1] Moreover, if the intention were to protect such rights Paragraph 3 would not have been worded as a gift, devise and bequest. The language of Paragraph 3 is as follows:

"I give, devise and bequeath to my wife * * * all her statutory rights in my real and personal property wheresoever the same may be situated or located * * *."

I think this should be given meaning as a devise and bequest; and so I con-

sider the content or measure of the gift. This is sufficiently clear even though not entirely so. The measure of the devise and bequest, adhering to its language, is found in those statutory provisions describing a widow's share in the real and personal property of a deceased husband, wheresoever the same is situated; that is, the provisions of the statute are by reference made the measure of the gift.[2]

Thus I think the District Court reached essentially the correct conclusion. The court described the bequest as a "pecuniary" one of the value of the widow's share measured as I have indicated. Perhaps it could better be described as the bequest of the share itself, rather than as a "pecuniary" one; but this difference is not significant.

It is true, as the opinion of the court states, the will, including of course Paragraph 3, speaks of the time of the testator's death, and at that time one of the rights of the widow was the right to renounce the will and take the share she would take had testator died intestate. But the assumption made by the court that Paragraph 3 may have been included to protect this as well as the widow's other statutory rights does not seem to me to support the court's construction of that paragraph. The right of renunciation is the only statutory right left unprotected at the time of death, for it depends upon affirmative action by the widow within six months after administration of the estate. Under the trial court's construction Paragraph 3 gives the widow as a devise and bequest the share she would take in the event of intestacy even though she should fail to exercise the right of renunciation within the time required by statute. This court's construction of Paragraph

---

1. The majority suggests that Paragraph 3 might have been included in order to bring these statutory benefits within the scope of the estate tax marital deduction. The trial court in reaching its decision in the remand proceedings specifically dealt with this issue and rejected the position now taken by the majority. Even assuming that Paragraph 3 has some tax value this does not explain its general and all-inclusive language, which goes far beyond what is necessary to provide the relatively small tax savings suggested by the majority.

2. These statutory rights are set out at 18 D.C.Code § 101 and 18 D.C.Code § 703; they are those to which a widow is entitled upon the death of her spouse intestate.

3 gives no protection to the right of renunciation.

The question in the final analysis is whether the contested provision is a gift, devise and bequest of a share in the testator's estate measured by his widow's statutory share had he died intestate, or is merely a declaration by him that his widow shall have the incidental statutory rights she would have had in any event. I think the language used by testator shows he intended more than the latter. He explicitly made a gift, devise and bequest. This is not language he would have used, with the assistance of an experienced draftsman to accomplish nothing for his wife except, by indirection, the possible tax benefits referred to in note 1, *supra*.

I respectfully dissent.