**BAKER v. NATIONAL SAVINGS AND TRUST CO. et al.**

No. 10035.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 9, 1949.

Decided Feb. 13, 1950.

Mr. John Lewis Smith, Jr., Washington, D. C., with whom Mr. John Lewis Smith, Washington, D. C., was on the brief, for appellant.

Messrs. Arthur P. Drury, John M. Lynham and John E. Powell, Washington, D. C., entered appearances for appellees National Savings and Trust Company and Charles Edwin Warfield as surviving trustees.

Mr. Seymour Sheriff, Washington, D. C., for appellees Donald B. Edmonston, individually and as conservator of the property of Joseph B. Edmonston, non compos mentis, and Paul Edmonston.

Mr. Wilton H. Wallace, Washington, D. C., with whom Mr. Henry F. Lerch, Washington, D. C., was on the brief, for appellees Katherine Virginia Ring, Mary Virginia Ring Young, Elizabeth Morton Ring Bransdorf and Morton Loomis Ring, Jr.

Mr. Hubert G. King, Washington, D. C., Guardian ad litem for appellee Richard Lewis Ring.

Before CLARK, PRETTYMAN and BAZELON, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Columbia construing a will. 80 F.Supp. 610. The action was brought by the trustees under the will and was decided on a motion for judgment on the pleadings filed by the guardian ad litem for certain infant defendants. The pleadings included a copy of the will itself, statements as to the relationship

of the parties, and the course of conduct of the trustees in administering the will since its probate in 1926, but no other facts.

■ It has been recited times without number that the first and conclusive rule in construing a will is to ascertain the intent of the testator. But in the reported cases from the earliest times the application of the rule has been surrounded with almost incredible fog. The rule is a mandate of the most practical sort. It concerns the mind of the testator, whoever he may have been, and means that the court is to find out what the testator meant to do with his property. Too frequently "the intent of the testator" is treated as a legal abstraction, or as the deduction most agreeable to trained legal minds. It is neither. The intent of a testator is what the testator had in mind.

Intent can usually be seen upon the face of the words used in the will. If so, there is an end to inquiry. But sometimes the language used by a testator does not convey certainty of meaning, and sometimes it conveys no meaning at all to a stranger. In such event, the inquirer must look at the facts and circumstances which surrounded the testator when he made the will. Often otherwise obscure or meaningless language becomes perfectly clear when viewed in the light of the circumstances in which it was written.

■ This right to examine facts extrinsic to the written words of a will does not include the right to change the written words, if they are clear, or to supply a provision omitted by the testator, or to guess at what his intent would have been if he had thought of a contingency which he plainly did not think of or which is not covered by some general discernible intent. The right to look at extrinsic facts is limited to an effort to understand what the testator meant when he wrote language which, upon its face and

without explanation, is doubtful or meaningless.

The confusion which has enveloped this subject is quickly revealed by an examination of the reported cases and law review articles, such, for example, as those collected and discussed in Page on Wills §§ 920, 1086, 1617–1630 (Lifetime Ed.). If there are indications in early opinions of this court [1] that resort can never be had to extrinsic evidence to ascertain the intent of a testator, that impression has long since been dispelled.[2]

■ If no actual intent on the part of the testator can be discerned, either from his language alone or from that language viewed in the light of the circumstances which surrounded him when he wrote, the court must construe the will by applying to the language of the testator rules which the law has established as productive of the best results as a matter of public policy.[3] Courts frequently describe this step as a presumption of intent; they say that the testator is presumed to have meant what the law has in the past construed equally obscure language to mean, or to have meant the result which the law favors. But this method of describing this process must not be confused so as to permit it to be a substitute for ascertaining the actual intent of the testator. What is called presumption of intent cannot be indulged if a true intent can be ascertained. If no intent can be ascertained, rules of law are applied to the will by the court in order to reach a disposition of the property.

In the case at bar, we do not find the intent of the testator plain upon the face of the will. He left all his property in trust. We need not linger over the provisions applicable during the lifetime of his wife; he left to his granddaughter Nettie W. Baker $100 a month and the balance of the income to his wife. His only child had pre-

---

1. E. g., McAleer v. Schneider, 1894, 2 App. D.C. 461; Crenshaw v. McCormick, 1902, 19 App.D.C. 494, 503.

2. E. g., Evans v. Ockershausen, 1938, 69 App.D.C. 285, 294, 100 F.2d 695, 704, 128 A.L.R. 177; Young v. Munsey Trust Co., 1940, 72 App.D.C. 73, 111 F.2d 514.

3. George Washington University v. Riggs Nat. Bank, 1936, 66 App.D.C. 389, 88 F. 2d 771; Dinwiddie v. Metzger, 1916, 45 App.D.C. 310, certiorari denied, 1916, 242 U.S. 631, 37 S.Ct. 15, 61 L.Ed. 537.

deceased him, but he had three granddaughters, whose surnames were Baker, Edmonston and Ring. For the sake of brevity and clarity, we shall call them by their surnames. His disposition of income, after the death of his wife, was: to Baker $100 a month, to Edmonston three-fifths of the remaining income, and to Ring two-fifths. So much is clear. The obscurity lies in the provisions relating to the disposition of the principal of the estate, both as to time and shares. Baker's income of $100 a month was for her life. Edmonston's income was for her life but "for the benefit of herself and her children". Ring's income was until the youngest great-grandchild living at the testator's death should be twenty-one years old. The shares of Ring and Edmonston in the income were to go to their issue, if any, or to the survivor, if one died without issue, until the respective terminations of the trusts.

To the provisions relating to income, the testator added provisions for the termination of "the trusts". He provided that the trusts should cease when his youngest great-grandchild living at the time of his death became twenty-one years old, but he provided that should either Edmonston or Ring be living at that date the trusts created for them should "continue for their respective benefits until their respective deaths." He provided that upon the termination of the trusts the principal of the estate should go to "my issue then living, per stirpes".

The text of the disputed provisions of the will is:

"Three. From and after the death of my said wife, or should my said wife predecease me then from and after my death, my said Trustees shall pay the balance of net income derived from my said residuary estate, after providing for the One hundred Dollars ($100) per month aforesaid, and the entire net income after the death of my said granddaughter, Nettie W. Baker, at convenient intervals, three-fifths thereof unto my granddaughter, Marie Edmonston, care of Kemp Edmonston, Barristers Hall, Boston, Massachusetts, for and during the term of her natural life for the benefit of herself and her children, with full power in my said Trustees in their discretion to apply said three-fifths of said net income for the benefit of my said granddaughter, Marie Edmonston, and her children during the lifetime of my said granddaughter; and the remaining two-fifths of net income derived from my said residuary estate shall by my said Trustees be paid at convenient intervals unto my granddaughter, Katherine Virginia Ring, at present residing at Indian Head, Maryland, until my youngest great-grandchild living at the time of my death shall attain the age of twenty-one years.

"In case of the death of either of said beneficiaries, Marie Edmonston and Katherine Virginia Ring, in the next preceding paragraph mentioned, the share of net income which the one so dying would have received had she survived shall be paid, per stirpes, unto the issue of the beneficiary so dying until the respective terminations of the trusts in this my Will created as hereinafter provided. In case of the death of either of said two beneficiaries leaving no issue her surviving, then and in said event the share of net income which said beneficiary so dying would have received had she survived shall be paid, until the respective terminations of the trusts as aforesaid, unto the survivor of said two beneficiaries or the issue, per stirpes, of the other of said two beneficiaries in case there be no such survivor.

"Four. Upon the attainment of the age of twenty-one years by my youngest great grandchild living at the time of my death, the trusts in this my Will created shall cease and determine, and my said Trustees, the survivors or survivor of them, shall pay, set over, assign, transfer, convey and deliver, in absolute estate and in fee simple, all of my estate and property then in their or its possession as said Trustees or Trustee unto my issue then living, per stirpes; provided, however, that should my said granddaughters Marie Edmonston and Katherine Virginia Ring, or either of them, be living upon the attainment of said age of twenty-one years by my youngest great grandchild living at the time of my death, then and in said event the trusts in this my Will created for the benefit of my said grand-

daughters, Marie Edmonston and Katherine Virginia Ring, shall continue for their respective benefits until their respective deaths."

The facts with which the court must now deal are: Edmonston died leaving six children; thereafter, the youngest great-grandchild living at the testator's death became twenty-one years of age; Baker is living; Ring is living and has four children. The questions, among others, are: (1) Should there have been a distribution, in whole or in part, upon the death of Edmonston? (2) Should there have been a distribution, in whole or in part, when the youngest great-grandchild became twenty-one years old? (3) If there were a distribution at either of these events, in what amount should it have been and to whom should it have gone? More particularly, should Baker have participated in the distribution, and, if so, in what amount? (4) If there were a distribution omitting Baker, should it be in halves to Ring and the children of Edmonston, or should Ring receive two-fifths and the children of Edmonston three-fifths? (5) If there should be no distribution until the death of Ring, to whom should the income be paid in the meantime?

The District Court, acting upon the language of the will alone, was of the view that "it was the intention of said testator that the trust estate should be held intact until the death of the last survivor of the defendants Nettie W. Baker and Katherine Virginia Ring." It expressed no conclusion concerning the shares in the distribution when distribution should be made, on the ground that these questions were premature.

■ As we have already said, we do not find the intent clear upon the face of the will. We think, however, that there may be facts or circumstances within the knowledge of some living person which might throw light upon that intent. We have in mind such facts, among others, and without in any way limiting the court, as the amount and character of the estate; the proportion of the income represented by the $100 a month left to Baker; the personal characteristics and family circumstances of the three granddaughters as throwing light upon what appears to be a difference in treatment among them; and the intra-family relationship of the three granddaughters. If the actual intent of the testator can be ascertained by inquiry into such and similar facts, it should be so ascertained and given effect. If no actual intent on the part of the testator can be ascertained, then the will must be construed, as we have already pointed out, by the application of rules of law to the language used in the will. In that event, we think that there should be no distribution of principal until the death of granddaughter Ring, but we are of the view that there could be a distribution at that time if an arrangement were made whereby Baker would be assured of $100 a month income for the term of her natural life; and we think that any distribution of principal should be one-half to the children of Edmonston and one-half to the children of Ring. We reach these conclusions because we do not think that the will can be construed to vest any interest in principal in Baker, but at the same time it cannot be construed to cut off her income of $100 a month during her life; and, further, we think that there is no feasible way in which the principal could be divided so as to carry out the explicit direction as to income that it be divided two-fifths and three-fifths. The conclusion we thus reach upon construction of the will, absent any reasonable knowledge of the actual intent of the testator, would effectuate those provisions which seem to run through the whole scheme of the will.

For the purpose of affording the parties opportunity to present any evidence which might reveal an actual intent in the mind of the testator at the time of making his will, the case is remanded to the District Court.

Remanded with instructions.