**BUNKER et al. v. JONES et al.**

No. 10285.

United States Court of Appeals District of Columbia Circuit

Argued Feb. 6, 1950.

Decided March 20, 1950.

---

Mr. Harrison F. Durand, New York City, of the Bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, with whom Mr. John H. Connaughton, Washington, D. C., was on the brief, for appellants.

Mr. Fontaine C. Bradley, Washington, D. C., with whom Mr. H. Marshall Peter, Washington, D. C., was on the brief, for appellees the Children's Seashore House for Invalid Children and Seamen's Church Institute of Philadelphia.

Mr. John M. Lynham, Washington, D. C., with whom Messrs. Arthur P. Drury and John E. Powell, Washington, D. C., were on the brief, for appellee Trustee of the Masonic Hall and Asylum Fund, a corporation.

Mr. A. Leckie Cox, Washington, D. C., with whom Mr. Louis M. Denit, Washington, D. C., was on the brief, for appellees Lord William Beresford and The Marchioness of Waterford, Executors and Trustees of the Estate of Lord William Beresford, deceased, the Protestant Episcopal Church at Stradbally, "Woodhouse" Estate and Charles de la Poer Beresford.

Messrs. Frederick M. Bradley, and Roger M. Stuart, Jr., Washington, D. C., entered appearances for Charles Hill Jones and Washington Loan & Trust Co., executors.

Before PRETTYMAN, FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Columbia instructing the executors of the will and codicils of the late Helen M. B. Rutherfoord. The executors do not participate in the appeal. It is before us at the instance of the next of kin of testatrix, who are opposed by certain residuary legatees and, on one question, by the executors and trustees of a legatee who predeceased testatrix.

Two questions are presented. One is whether a fund of $50,000 set aside under subparagraph 9(a) of the will (reduced from $75,000 by a codicil) passes by reason of the death of the life beneficiary of the fund, to the next of kin of testatrix

or to four institutions named as residuary legatees. The other question is whether the provisions of subparagraph 9(c) directing that the sum of $20,000 be paid to Lord Hugh Beresford, with certain requests, created a trust which continues notwithstanding he predeceased testatrix, or whether the sum passes to said next of kin or to the above mentioned residuary legatees. The District Court decided as to subparagraph 9(a) that upon the death of the life beneficiary the fund passed in equal parts to the four institutional residuary legatees. As to subparagraph 9(c) the court held that a valid trust was created and now continues notwithstanding the death of Lord Hugh Beresford.

A general description of a testamentary documents is helpful in interpreting the particular provisions in question. The opening clause of the will strongly expresses the purpose of testatrix "hereby to dispose of all property and estate, real and personal, which I now own or may hereafter acquire and to which I may be in any manner entitled at the time of my death, including any and all such property and estate, whether real or personal, as may be held in trust for my benefit with respect to which I have or shall have any power of disposition by will." The will proceeds to make a diverse disposition of a substantial estate. There are provisions for trust funds and gifts of real estate, bequests of furniture, paintings, portraits, jewelry, silverware, cash, books, linen, china, personal belongings, etc. Following these provisions paragraph 5 creates a trust fund of $100,000, the income to be paid to a named person for life, the corpus and accrued income upon the death of the life beneficiary to "fall into and become a part of the residuum of my estate, and as such distributable as hereinafter set forth." Paragraph 6 also creates a $100,000 trust fund in similar terms. Paragraph 7 thereupon makes numerous cash bequests. Paragraph 8 relates to taxes.

The disputed provisions are in paragraph numbered 9. The opening subparagraphs of this lengthy provision are as follows:

"9. All the rest, residue and remainder of my estate, both real and personal, including any legacies hereinbefore bequeathed which may lapse, I give, devise and bequeath to my husband, John Rutherfoord, Charles Hill Jones, and the said The Washington Loan and Trust Company, as trustees, the successors or survivors of them, for the persons, purposes, objects and uses and with the powers and duties, including in part, management, control, investment, reinvestment and sale thereof, and subject to the terms, conditions, limitations and expirations of the trusts as hereinafter specified, viz:

"(a) The trustees shall set aside from said residuary estate, in a separate fund, money or property in the principal amount of Seventy-five Thousand Dollars ($75,000.00) and shall continue to hold in trust, invest and reinvest and sell the same for the benefit of my cousin Anna Mason Coit, of Chestnut Hill, Pennsylvania, and shall pay over to her the net income therefrom semiannually so long as she shall live;" (the amount was reduced by codicil to $50,000).

Subparagraph 9(b) directs the trustees to set aside $50,000 to be held in trust for a named person under terms not necessary to detail; 9(c) is the disputed bequest to Lord Hugh Beresford discussed in Part II of this opinion; subparagraph 9(d) is similar in terms to 9(a), supra, except there is added a provision that upon the death of the life beneficiary the corpus shall go to the daughter of such beneficiary. Then comes subparagraph 9(e) reading as follows:

"(e) The said trustees shall set aside the balance of said residuary estate in a separate fund and shall continue to hold in trust, invest and reinvest and sell the same, for the benefit of my husband John Rutherfoord, and shall pay over to him the net income therefrom quarter-yearly so long as he shall live and at his death, or in case he shall predecease me, I direct that the balance of said residuary estate, together with any accrued income thereon, shall be distributed by said trustees, the successor or survivor of them, in the following manner:" naming several persons and organizations to whom specified sums are bequeathed.

The concluding portions of paragraph 9 are as follows:

"And the balance, if any, of my estate so held in trust, including such of the foregoing legacies as shall have lapsed, I give, devise and bequeath, and direct my said trustees to transfer, convey, deliver and pay over to the four institutions and for the purposes hereinbefore named in Paragraph 1 hereof, in equal shares as follows, to-wit:

"One-quarter thereof to the trustees of the Masonic Hall and Asylum Fund, State of New York;

"One-quarter thereof to the Right Worshipful Grand Lodge of the Most Ancient & Honorable Fraternity of Free and Accepted Masons of Pennsylvania and Masonic Jurisdiction Thereunto Belonging, Broad and Filbert Streets, Philadelphia, Pennsylvania;

"One-quarter thereof to The Children's Seashore House for Invalid Children, Atlantic City, New Jersey;

"And the remaining one-quarter thereof to Seamen's Church Institute, of Philadelphia, Pennsylvania."

From the foregoing it is apparent that the appellant next of kin are not significant beneficiaries. To one, a first cousin, was left $1.00; to another a few pieces of furniture; a ring was bequeathed to the wife of another. Another received nothing. Anna Mason Coit, a cousin, was the mother of another appellant. When the size of the estate is considered, it is clear that the principal recipients of testatrix's bounty are the four institutional residuary legatees named in the concluding portion of subparagraph 9(e), except that her husband, John Rutherfoord, was to be the chief beneficiary if he survived her. But he died before testatrix. Anna Mason Coit, named in subparagraph 9(a), survived her for a few months.

▮ I. We believe that the District Court correctly held that the $50,000 fund directed to be set aside by subparagraph 9(a) passes by reason of the death of Anna Mason Coit, the life beneficiary of the income thereof, to said four institutional residuary legatees under the last portion of subparagraph 9(e). It is quite clear testatrix intended to dispose completely of her estate. The usual presumption against intestacy, Kenaday v. Sinnott, 1900, 179 U.S. 606, 616, 21 S.Ct. 233, 45 L.Ed. 339; Fairclaw v. Forrest, 1942, 76 U.S.App.D.C. 197, 203, 130 F.2d 829, 835, 143 A.L.R. 1154; Kennedy v. Alexander, 1902, 21 App. D.C. 424, 434, is reinforced by the express words of testatrix hereinbefore quoted from the opening clause of her will. This intention would be defeated if we were to hold that upon Mrs. Coit's death intestacy resulted as to the fund. Furthermore, Mrs. Coit was to receive only the income of the $50,000 directed to be set aside out of the whole trust estate created by the opening sentences of paragraph 9. When she died the fund itself remained a part of that trust estate. No disposition was made of this fund except as the trust estate itself was disposed of. This contrasts with the provisions found in subparagraph 9(d), where, upon the death of the life beneficiary, the will provides that the corpus of the fund shall go to the daughter of such beneficiary. No similar provision is made with respect to the 9(a) fund. It would have become a part of the balance of the residuary estate set aside in 9(e) for the husband for his life had he survived testatrix and Anna Mason Coit. Since he predeceased them it goes where subparagraph 9(e) directs as to what remains in the trust estate created by paragraph 9, that is, first to named beneficiaries in specified amounts, "the balance, if any, of my estate so held in trust * * *" to the four institutions. This construction accords with the testatrix's two basic intentions not to die intestate as to any part of her estate and to bring into the final and successive residuary clauses all that remains undisposed of by preceding provisions.

▮ It is argued to the contrary that when the $50,000 was directed to be set aside in 9(a) that amount should in no manner be considered a part of the "balance, if any" referred to in 9(e) but should be considered as having been undisposed of upon the death of Anna Mason Coit.

It is said that the care and detail of the will indicate that if testatrix intended to dispose of the fund upon Mrs. Coit's death she would have made an express provision doing so. But the absence of a provision such as is contained in other subparagraphs devolving the corpus upon another at the end of the beneficial life interest, indicates to us that she thought disposition was made of it, that is, that it remained in and was disposed of by the residuary clauses because not disposed of elsewhere. See Reeves v. American Security & Trust Co., 1940, 72 U.S.App.D.C. 403, 115 F.2d 145, certiorari denied 311 U.S. 710, 61 S.Ct. 318, 85 L.Ed. 461. It is also argued that the "balance, if any" clause in the concluding portion of paragraph 9 indicates doubt on the part of testatrix that any balance was left and such doubt is not consistent with an intention that upon Mrs. Coit's death the fund would be a part of this final residuary disposition. The argument has some force. The duty of the court, however, is to follow the stronger current of intention. The fair intendment of the will as a whole and of the language affecting the particular fund is that upon the death of Anna Mason Coit the fund was to be retained in the residuum trust estate. The scheme of the will indicates that unless this were desired other specific provision would have been made. The scheme also indicates the intention that the successive residuary clauses should absorb the remnants of any preceding legacy. Since the language of the will as we have indicated furnishes a completely adequate medium for the carrying out of this intention we may not fail to give effect to it, particularly in view of the strongly expressed purpose of testatrix not to die intestate as to any part of the estate. Kenaday v. Sinnott, supra, Evans v. Evans, 1931, 60 App.D.C. 371, 55 F.2d 533.

Appellants rely upon George Washington University v. Riggs National Bank, 1936, 66 App.D.C. 389, 88 F.2d 771, 774. The testator had left the residue of his estate equally to four named charities. One was disqualified by the statute which barred a bequest to a religious institution in a will executed less than one calendar month before the death of the testator. The question was whether the other three residuary legatees should receive an equal part of this fourth bequest which had failed. The opinion refers to several state statutes similar to 19 D.C.Code § 110 (1940), which reads:

*"Lapsed or void devises.* * * * Unless a contrary intention appear by the will, such property as shall be comprised in any devise or bequest in such will which shall fail or be void or otherwise incapable of taking effect shall be deemed included in the residuary devise or bequest, if any, contained in such will."

The court discussed approvingly decisions of state courts holding that notwithstanding such statutes to the effect that a devise or bequest which fails shall fall into the residuary estate, unless a contrary intention appears, such provisions do not apply when the devise or bequest which fails is itself a part of the residuary estate. The court said:

"We are therefore clearly of the opinion that in the absence of definite language in the will giving the void legacy to the other residuary legatees, it must be held that the testator died intestate as to the void legacy. It cannot go to increase the shares of the other tenants in common."

But the case is not helpful in construing the Rutherfoord will. The general residuary paragraph of which subparagraph 9(a) is a part has its own residuary clauses which are intended to take hold of anything remaining from the preceding portions of the paragraph. This is quite different from the situation in the George Washington University case. Furthermore, the Rutherfoord will evidences the intention that the final residuary clause receive the fund upon the death of the life beneficiary if it were not absorbed by the specific bequests made by subparagraph 9(e). No such intention appeared from the will in the earlier case. The present question is much closer to that involved in In re Carson's Estate, 1938, 130 Pa.Super. 133, 196 A. 527, where under comparable cir-

cumstances the court reached a conclusion like our own regarding the will of Mrs. Rutherfoord.

Moreover, in the circumstances of this case, we cannot apply the principle that if " 'the testator has overlooked a condition which he would perhaps have provided for if it had occurred to him, the court cannot guess at what provision he would probably have made and by construction read it as a part of his will on the presumption that he would naturally have made such a provision if he had thought of it. Moeller v. Moeller, 281 Ill. 397, 117 N.E. 1002' ", George Washington University v. Riggs National Bank, supra. As we have said, the language of the will quite adequately conveys the meaning.

II. The second question poses the interpretation of subparagraph 9(c). It must be read with the opening part of paragraph 9 set forth above. Subparagraph 9(c) itself reads:

"(c) To pay Lord Hugh Beresford of "Woodhouse," Stradbally, County Waterford, Ireland, the sum of Twenty Thousand Dollars ($20,000.00) with the request that he invest and reinvest the fund during his life and the net income therefrom to use for the care of the graves in the Churchyard of the Protestant Episcopal Church at Stradbally, County Waterford, Ireland on the woodhouse Estate, especially the lots where are buried Colonel George John Beresford and his wife and Robert Beresford and his wife Laura, as well as other members of the family; and also for the care and upkeep of the said Protestant Episcopal Church at Stradbally, County Waterford, Ireland, on the Woodhouse Estate; and with the further request that he make provision in his will or otherwise during his life for the investment and reinvestment of a sum of the same amount and the use of the income for the purposes mentioned as long as is possible under the laws of the Kingdom of Great Britain and Ireland."

■ Lord Hugh Beresford predeceased testatrix. The District Court instructed that "Paragraph 9(c) of said will created a valid charitable trust" and ordered "that the 'Representative Church Body of the Church of Ireland' is hereby substituted as trustee in the place and stead of Lord Hugh Beresford, deceased, * * *." The next of kin of testatrix urge that upon the death of Lord Hugh prior to that of testatrix the 9(c) bequest lapsed and became distributable as intestate property. But if this legacy lapsed the sum which composed it passed in equal parts to the four institutional residuary legatees, under the language of the last portion of paragraph 9, "* * * the balance, if any, of my estate so held in trust including such of the foregoing legacies as shall have lapsed, I give" to said four institutions. This clause, under the circumstances which we have reviewed under Part I, may not be so narrowly construed as to include only the immediately preceding specific legacies which might lapse. In view of the basic and expressed intention of testatrix to dispose of her entire estate, as well as the structure and language of the will as a whole, already sufficiently discussed, we may not give so limited a meaning to language which is entirely sufficient to carry out such intention. The construction we give also seems required by the provisions of 19 D.C. Code § 110 (1940), supra. By reason of this Code provision it can hardly be denied that should the bequest of 9(c) be held to have failed or otherwise to be incapable of taking effect upon the death of Lord Hugh, it would pass to the residuary legatees, no contrary intention appearing. Since, therefore, were the trust invalid the fund upon the death of Lord Hugh would not go to the next of kin they are not in a position to urge the invalidity of the trust. They are properly heard to seek a construction which would result in intestacy. They are parties aggrieved by the decision of the District Court against them on that issue [17 D.C.Code § 101 (1940)]. But their interest in the controversy does not extend to a dispute which might exist between others over the validity of the trust when neither validity nor invalidity would affect them. If the trust is valid the

fund remains in it; if invalid it would go not to the next of kin but to the four final residuary legatees. The interest of the next of kin is ended when it is decided, as we do, that intestacy would not result whatever the decision on the question of the validity of the trust. None who properly would be a party to a controversy over that question contests the judgment of the court below upholding the trust and appointing a trustee to carry it out.

Affirmed.