Jennie M. WARNER, Appellant,

v.

Anna Parker WARNER et al., Appellees.

No. 13030.

United States Court of Appeals
District of Columbia Circuit.

Aug. 30, 1956.

Petition for Rehearing In Banc Denied
Sept. 24, 1956.

Mr. Murdaugh Stuart Madden, Washington, D. C., for appellant.

Mr. Brainard H. Warner, III, Washington, D. C., with whom Messrs. Remsen B. Ogilby, Alfred L. Bennett, and Harvey Rosenberg, Washington, D. C., were on the brief, for appellees. Messrs. Frederick M. Bradley and J. Bruce Kellison,

Washington, D. C., entered appearances for appellee Riggs Nat. Bank.

Before EDGERTON, Chief Judge, and BASTIAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

This is an appeal from a decision of the District Court instructing a trustee, on his petition for instructions, as to the distribution of the corpus of a trust created by the will of Brainard Warner, Sr. The pertinent trust provisions are as follows:

All the rest, residue and remainder of my estate, * * * I give, * * * unto The Washington Loan and Trust Company, * * * in trust * * *; third, to divide the remainder of the net income from this trust estate among my wife, Mary H. Warner and my nine children in equal shares, such payments to commence as soon as practicable after my decease and to continue for and during the term of the life of my said wife.[1] On the death of my said wife, I direct my said trustee to divide the entire residuum of my estate into nine (9) equal parts paying one part thereof unto each of my said children.[2] In the event of the death of any of said children before the decease of my said wife, with issue him or her surviving, then such issue shall take the share of its deceased parent *in the income* and on the death of my wife the share of the deceased parent *in the principal,* but if there be no such issue, then the share of the deceased child *in the income* shall be paid to the survivor or survivors of my said wife and children as the case may be, share and share alike until the death of my

said wife, when the final division shall take place. (Italics and footnotes added.) (J.A. 10–11.)

Five of testator's nine children survived him and the life tenant; one child predeceased testator without issue; three children survived testator but predeceased the life tenant, one leaving issue and two leaving no issue. Plaintiff joined as parties defendant the five surviving children, the three children of the child who died before the life tenant and with issue, and the two sole beneficiaries[3] of the estates of the two children who survived testator but predeceased the life tenant without issue. The plaintiff-trustee asked for instructions on the following questions:

1. Did the testator intend that the interest of those children who survived him and died without issue before the death of the life tenant pass under their respective wills to the distributees thereunder,

or

2. Did the testator intend that the interests of those children who survived him and died without issue before the death of the life tenant be divested on death and follow the provision for the payment of income and vest per stirpes in the surviving children or the issue of a deceased child and be distributed accordingly?

The District Court ruled that an examination of the entire will revealed that testator intended to provide primarily both income and principal for his children and their issue, thereby retaining his estate in the "blood line." The Court stated it was "satisfied that the testator intended to divest the share of the child dying without issue in the principal as well as the income, and the proper construction is that there are cross-remain-

---

1. By the time of testator's death in 1916 one child, Southard Parker Warner, had predeceased him, unmarried and without issue.

2. The wife died in 1954 and during the period from the death of the testator until the death of the wife, three more of his children had died as follows: (a)

Brainard H. Warner, Jr., who died leaving issue who still survive; (b) Rebecca P. Warner, who died testate and without issue; and (c) Andrew Parker Warner, who died testate and without issue.

3. Jennie M. Warner, widow of Andrew Parker Warner, and Anna Parker Warner, sister of Rebecca P. Warner.

ders both as to the income and principal to surviving children, although the will, being ineptly drawn, fails to include the word 'principal'." In other words the trial court has read the will as though it contained provisions for final division of principal in substantially the same terms as testator used with respect to income.

Jennie M. Warner appealed from this decision, contending that her husband, Andrew Parker Warner, having survived the testator, received a vested remainder which could be divested *only* if he died *with issue* and since Andrew died without issue, Jennie, sole beneficiary under his will, was entitled to his share of the principal. Thus, the issues before us are:

(a) Did Andrew acquire a vested remainder in the principal?

(b) If so, what provision of the will, if any, operates to *divest* Andrew's remainder?

 As to the first issue, there is little dispute. The law favors early vesting unless testator manifests a contrary intent. Since Andrew Parker Warner was in being at the death of the testator and had an immediate right to possession upon the expiration of his mother's life tenancy, his remainder interest became vested at the death of the testator.[4] 2 Powell on Real Property, Para. 318, p. 684 (1950); McArthur v. Scott, 1885, 113 U.S. 340, 5 S.Ct. 652, 28 L.Ed. 1015; American Security & Trust Co. v. Sullivan, D.C.D.C.1947, 72 F.Supp. 925; Plitt v. Plitt, 1934, 167 Md. 252, 173 A. 35, 109 A.L.R. 1; § 45–812, D.C. Code 1951.

 The second question, then, is what provision of the will, if any, divested Andrew's remainder interest in the principal. Divestiture is not accomplished by the provision that "In the event of the death of any of said children before the decease of my said wife, with issue him

or her surviving, then such issue shall take the share of its deceased parent * * * in the principal." A provision, such as this, that the children of deceased remaindermen shall take their parents' share is not sufficient to prevent the remainder from being vested; divestiture occurs only upon death leaving issue—there is no divestiture by death alone without issue. McArthur v. Scott, supra; American Security & Trust Co. v. Sullivan, supra; Plitt v. Plitt, supra; See Pyne v. Pyne, 1946, 81 U.S.App.D.C. 11, 18, 154 F.2d 297, 304.

If divestiture of Andrew's share of the principal is to be accomplished, it must be by implication based on the fact that the will provides for divestment of the interest *in income* of those children dying without issue. Appellees contended, and the District Court held, that since the testator provided for the divestiture of the *income interests* of children dying without issue and set up cross-remainders of such interests in the survivors of his wife and children, similar cross-remainders must be implied as to the interest in principal of children dying without issue, even though the will does not so state.

Appellees rely on two cases [5] in which a cross-remainder of principal was implied when there was a cross-remainder of income. It is clear, however, that these cases do not establish a rule that a cross-remainder of principal *must* be implied in such circumstances. In Boston Safe-Deposit & Trust Co. v. Coffin, supra, footnote 5, the court found that the testator intended each branch of his family to have ⅓th of his estate. Therefore, rather than declare two-thirds of one of the ⅓th interests intestate property, thus taking it away from that branch of the family, the court implied a cross-remainder of principal as to the two-thirds. This was done to prevent partial intestacy and to maintain equality of treatment between different branches of the

---

4. Appellees conceded in their brief, p. 13, that the will created vested remainders.

5. Boston Safe-Deposit & Trust Co. v. Coffin, 1890, 152 Mass. 95, 25 N.E. 30, 8

L.R.A. 740; Hilton v. Kinsey, 1950, 88 U.S.App.D.C. 14, 185 F.2d 885, 23 A.L.R. 2d 830.

564

family. Furthermore, since the will had never made any disposition of the principal interest in suit there was no divestment of a vested interest by implication—i. e., the court supplied a disposition where the will was silent; it did not change a disposition already made.

Hilton v. Kinsey, supra, footnote 5, concerned the construction of an extremely "ineptly drawn" will. It was necessary for this court to make certain interpretations; e. g., the word "offspring" was limited by interpretation to mean "children" in order to prevent the will from violating the rule against perpetuities, and the phrase "his * * * and * * * her interest" was interpreted to mean "share of the corpus." The court then found the general plan of testator was that his grandchildren were to be the ultimate beneficiaries and a cross-remainder of a share of the principal was implied in the surviving grandchild. The alternative interpretation, aside from finding an intestacy, would have resulted in a charity taking, and the court stated that an interpretation was favored which prefers the family and kindred to "utter strangers."[6]

In both of these cases the remainder interest in income, provided by the will, went to a person other than the one in whom the remainder interest in principal was implied. In neither case did the court indicate it was implying the remainder in principal simply because of the existence of the income remainder; both courts relied on other factors which they considered indicative of testators' intent.

Appellant relies on De Korwin v. First Nat. Bank of Chicago, 7th Cir., 1949, 179 F.2d 347, certiorari denied, 1950, Pratt v. De Korwin, 339 U.S. 982, 70 S.Ct. 1025, 94 L.Ed. 1386, which involved a problem similar to that presented by the Warner will. The court there had to construe the following testamentary provision:

" 'Sixth:—When the last survivor of my daughters shall have deceased and the youngest surviving child of my daughters shall have attained the age of twenty-one (21) years all of said trust estate then remaining in the hands of said trustee shall be divided in equal shares between my grand-children, the surviving issue of any deceased grand-child to stand in the place of and receive the share which such deceased grand-child would have been entitled to receive if then living.' " 179 F.2d at page 348.

The court concluded that the words following "grand-children" do not prevent the remainders from vesting on the death of the testator but instead fix the conditions upon which *divestiture* will occur and the gift to the descendants of the deceased remaindermen will take effect. It was argued in this case, as here, that testator's central purpose was to keep his estate in the hands of his lineal descendants *because he limited the enjoyment of the trust income to his lineal descendants*. The court held, however:

" * * * But to argue that the testator, because he limited the enjoyment of the trust income to his lineal descendants, intended to follow the same pattern in disposing of the corpus is to indulge, we think, in a *non sequitur*. Indeed, the clarity of the language with which the testator expressed his intention to restrict to his lineal descendants the enjoyment of the trust income, in contrast with the language employed by him in disposing of the trust corpus, weighs against appellants' contention that he was attempting to follow the same scheme in both instances. And finally, it must be remembered that the best guide to the testator's intent is the particular dispositive language used by him. Here, that language, though perhaps not as plain as some might desire,

6. We do not regard a son's wife as an "utter stranger" to the family and in a position comparable to a charity, even when the son married her after the death of the father.

is substantially equivalent to that which Illinois construes as creating a vested remainder, subject to divestiture only by death with issue in the period prior to distribution. * * *" 179 F.2d at page 350. Since in the case of one of the grandchildren (Stanley) the event upon which divestiture was conditioned—death with issue—did not occur, his interest in the corpus passed intestate to his heirs at law.[7]

We cannot agree with the District Court that an examination of the entire will demonstrates testator intended to retain his estate in the blood line and that the will was "ineptly drawn." Standing alone, the fact that testator explicitly provided for the divestiture of the *income* interest of children dying without issue is not the kind of evidence of testator's intent on which courts should rely to divest such childrens' vested remainder in the *principal*. Furthermore, while it is true that the testator provided for the divestment of a deceased parent's share of the *principal* when the parent was survived by issue, this provision alone does not establish that testator wanted all his property to remain in the blood line. If such *were* testator's intent he would more likely have made entirely different provisions—e. g., he might have set up a trust, with his wife and nine children as income beneficiaries, and the trust to terminate when the last one of this group died; at that time the issue of the nine children would take their parents' share of the corpus plus one-ninth of the wife's share; there would be appropriate provisions for the issue of a deceased parent taking the

parent's share of the income and cross-remainders of income interests of those parents dying without issue; it would also be provided that the share of principal of a child dying without issue would go to the issue of the other children. Such a provision would have assured that the estate was kept in the blood line for a longer period of time than was possible under the disposition testator did make. For under the will *as written* any child who survived the wife received the corpus absolutely and could dispose of it in any way he chose—he could leave it in toto to his spouse, charities, etc., by testamentary or inter vivos grants, thus taking it out of the blood line completely. This, it seems to us, tends substantially to neutralize if not entirely negate the "blood line" argument.[8] Contrary to the conclusion of the court below, we feel the will *does not* show an intent to keep the estate in the blood line.

An analysis of the controlling provisions of the will also suggests it was not "ineptly drawn" and that, on the contrary, the will uses the pertinent terms artfully. Testator, with discriminating use of the terms "income" and "principal," specifically provided that issue shall take the share of a deceased parent in the *income* and on death of the life tenant a share in the *principal*. He next provided for a cross-remainder of the *income* interest of a child who predeceased the life tenant without issue and then refers to the "final division." The crucial words he used are all words of art contained in a single sentence and we find it difficult to assume that a testator who was presumably trained and experienced in probate and trust work[9] would make

7. Plaintiff in this case was the executrix of Joseph De Korwin who had married testator's oldest daughter and was the father of testator's grandchild, Stanley. Stanley's other heirs were a widow and half-sister. Another grandchild, Otto, died without issue and leaving as heirs a widow, father, sister and half-brother. Thus, the court was not impressed by the fact that the estate would pass out of testator's blood line. De Korwin v. First Nat. Bank of Chicago, D.C.N.D.Ill.1949, 84 F.Supp. 918, 923.

8. That testator was not concerned that all his property stay in the "blood line" is further evidenced by the fact that he bequeathed $6000 to each of his nine children absolutely, to be paid when they became 21 (J.A. 9).

9. Testator was president of the Washington Loan and Trust Company, Washington, D. C., for some years prior to making this will (J.A. 27).

such specific provisions, employing the words "income" and "principal", and intend something *other* than what he said. We are impressed by the fact that if testator *intended* to say what he did in fact say, he chose the simplest way of doing so, even to the point of a terseness which gave rise to the seeming need for judicial instruction. To find for appellees we must rule that, assuming testator meant just what he said, he should have explicitly stated, "Furthermore, there are to be no cross-remainders of principal." We cannot expect testators to rebut, in this fashion, possible interpretations of their words.

To sustain the trial court's holding we must at least do one of two things:

(a) *read out* of the will the words "in the income."

or

(b) *read into* the will a whole new clause dealing with "the final division" of *principal* in the event of the death of any of testator's children without issue.

The trial court felt that the testator merely omitted the word "principal." However, the problem is more than a matter of simply supplying the words "and principal" to the phrase dealing with disposition of income. The "income provision" concerns the wife and surviving children and *only* during the life of the wife. The problem of "principal" disposition commences only on the death of the wife and would apply (on the trial court's theory) only to the children then surviving or, if deceased, to their issue. The suggestion that the simple insertion of the words "and principal" after "in the income" solves all over-

looks the fact that the first problem involves the wife *and* the children and the second involves only the children and their issue *after* the wife's death.

It seems to us to be beyond the powers of judicial interpretation to say that the last inclusion of the phrase "in the income" was inadvertent or that the testator intended, but omitted to provide, that the principal be disposed of in a pattern similar to the disposition of the income. We must conclude that the will is "ineptly drawn" only if we start with the premise that the testator intended to confine his bounty to "blood relatives" and to eliminate "in-laws." [10] We can find nothing in the will which supports such a premise.

Appellees' final argument in support of an interpretation implying cross-mainders of principal is that if the court finds the will creates vested remainders subject to divestiture only as to children dying *with* issue, there will be an intestacy as to the share of Southard Parker Warner who predeceased testator without issue. This point was not relied on or discussed by the District Court.

This court has held that the provision in the District of Columbia lapse statute [11] that a devise or bequest which fails shall be deemed included in the residuary clause of the will is inapplicable to devises and bequests *in the residuum* and that as to such devises and bequests there is an intestacy. *George Washington University v. Riggs National Bank of Washinton, D. C.*, 1936, 66 App.D.C. 389, 88 F.2d 771; 3 Powell on Real Property, Para. 353, p. 93 (1952), cf. *Bunker v. Jones*, 1950, 86 U.S.App.D.C. 231, 181 F.2d 619. Appellees argue that since

---

10. As we pointed out above, all parties concede that if testator's son survived the life tenant, the 1/9th share could be given to "in-laws" or any others selected by the son.

11. This statute provides:
"If a devisee or legatee die before the testator, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed as the devisee or

legatee would have done if he had survived the testator, unless a different disposition be made or required by the will. Unless a contrary intention appear by the will, such property as shall be comprised in any devise or bequest in such will which shall fail or be void or otherwise incapable of taking effect shall be deemed included in the residuary devise or bequest, if any, contained in such will." § 19–110, D.C.Code 1951.

the bequest to Southard was in the residuary clause of the will there will be an intestacy as to a ⅛th share of the principal unless there is implied a cross-remainder of the principal interest of a child dying without issue. Appellees, therefore, contend that we must adopt their interpretation in order to avoid intestacy as to a ⅛th share.

 Generally speaking if there are two permissible interpretations of a will courts prefer to adopt the one which will avoid intestacy. However, we do not believe that on the facts of this case, in order to avoid intestacy [12] only as to a ⅛th share of the residuum, we should read precise and controlling words into this will when there is no showing that the testator intended them to be there, especially when the result would be a divestiture of a vested remainder.

■ It is where the words of an instrument as written produce no rational result whatever that courts, faced with an obligation to resolve the problem by decision, can and do interpret the instrument to produce a result which they regard as consistent with the whole. But where the words as written produce a result which is not irrational or inconsistent with the evident intent of the instrument then courts should refrain from reading controlling words into or out of the instrument. That this may lead to a partial intestacy is not sufficient to warrant rewriting this will on the basis of the scant evidence we have as to testator's unexpressed intent, since the document can be rationally interpreted and applied without adding or excising words.

■ Therefore, we hold that this instrument gave testator's children vested remainders in the principal subject to being divested only on death with issue and that the interests of Rebecca P. Warner and Andrew Parker Warner were transmissible by their respective wills to their distributees, Anna Parker Warner and Jennie M. Warner. Since

the parties have never explicitly considered the question of the effect of this ruling on Southard's ⅛th share and the trial court did not reach or rule on this point, we shall remand the case for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

12. We do not decide here whether or not there is an intestacy, but only rule that

our decision is not affected by such an assumption.