**DISTRICT OF COLUMBIA, Appellant,**

v.

**ESTATE OF Evelyn PARSONS, Appellee.**

**No. 90–537.**

District of Columbia Court of Appeals.

Argued Feb. 21, 1991.
Decided April 25, 1991.

Susan McDonald, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Washington, D.C., Deputy Corp. Counsel, were on the brief, for appellant.

Richard S. McKernon, Rockville, Md., for appellee.

Before ROGERS, Chief Judge, FARRELL, Associate Judge, and MACK, Senior Judge.

FARRELL, Associate Judge:

 This appeal asks us to decide whether the words "and other personal property," as used in the will of testatrix Evelyn Parsons, constitute a residuary clause embracing a lapsed bequest of money to the testatrix' sister made elsewhere in the will, or rather, as the District of Columbia (the District) contends, the will contains no residuary clause and the lapsed bequest of money escheats to the District by operation of law. The trial judge, applying the rule of construction favoring interpretation of a will so as to avoid intestacy (whole or partial), found the phrase in question to be a valid residuary clause embracing the lapsed devise of money. We conclude, however, that the intent of the testatrix is not clear on the face of the will and that, in these circumstances, the obligation of a court to discern the testatrix' meaning in employing the words she did requires a remand for consideration of extrinsic evidence that may bear upon the issue.

## I.

Evelyn Parsons died on December 27, 1986, and her will was admitted to probate on January 16, 1987. The estate consisted entirely of personalty. Her will reads as follows:

I, Evelyn Parsons, of the City of Washington, the District of Columbia, being of sound and disposing mind, memory, and understanding, do make, publish, and declare this instrument in writing as and for my last Will and Testament, hereby revoking, annulling, and making void any and all Wills, Testaments, and Codicils by me at any time heretofore made.

ITEM I. I direct my executor, hereinafter named, to pay all of my just debts and funeral expenses as soon after my death as may be convenient. I have prepaid Joseph Gawler's Sons $1,800 to defray my funeral expense. If there is any further expense, I authorize my executor to pay same if he determines it to be just.

ITEM II. I direct that my remains be interred in a lot owned by my deceased husband, Russell C. Parsons, and me in George Washington Cemetery, Riggs Road, Prince George's County, Maryland.

ITEM III. I give and bequeath all money I have on deposit in the Riggs National Bank, Washington D.C., and any other money I may have at the time of my death to my sister, Miss Mabelle Pearson, 100 Norway Street, # 608 Marville House, Boston, Massachusetts 02115.

ITEM IV. I give and bequeath my autumn haze mink stroller to my sister, Miss Mabelle Pearson.

ITEM V. I give and bequeath all of the contents of my apartment, furniture, rugs, silverware, china, jewelry, and other personal property, to be divided equally, as possible, at the sole discretion of my executor, among John S. Teunis, B. Scott Teunis, Clayton Teunis, and Edwin H.O. Stokes.

ITEM VI. [appointment of executor]. [Duly signed, executed, and witnessed the 12th of May, 1978].

Evelyn Parsons' sister, Mabelle Pearson, named in Item III and Item IV of the will, predeceased the testatrix without issue. As a result, the personal representative, John S. Teunis, proposed to distribute the monies described in Item III of the will to the four named individuals in Item V. On September 12, 1988, the District filed objections to the proposal made by the personal representative. It asserted that the legacy of monies in Item III had lapsed, and because the beneficiary predeceased the tes-

tatrix without issue and the will contained no residuary clause, the provisions of D.C. Code § 18–308 (1989) did not prevent these monies from passing through intestacy.[1] Rather, because Ms. Parsons had no known heirs, the District argued that the monies escheated to the District of Columbia under D.C.Code § 19–701 (1989).[2]

The personal representative filed a response to the District's objections stating his opinion that "[t]here was no residuary clause in the will," but that if the testatrix had known of the contingency of her sister predeceasing her, she would have included a residuary clause. He expressed certainty that in that event Ms. Parsons would have named as residuary beneficiaries the four named individuals in Item V, whose families had been "close personal friends of the deceased for approximately 50 years." The response by the personal representative also stated that Edwin H.O. Stokes, the attorney who wrote the will, had not advised testatrix of the need for a residuary clause in her will. Attached to the response was a letter from attorney Stokes stating that the testatrix had intended to provide for her sister and assumed that the sister would outlive her. He stated, however, that if the sister's care had not been in question, Ms. Parsons "would desire" her cash assets to be distributed among the four named individuals in Item V, "as implied by the distribution of her personal effects."

In a memorandum opinion and order entered February 5, 1990, the trial judge overruled the District's objections, finding that the language "and other personal property" in Item V of the will constituted a valid residuary clause disposing of all personal property in the decedent's estate, including the money bequeathed in Item III. The judge reasoned:

> Unless the will were so construed, there would be a partial intestacy as to any personal property not enumerated. This would be contrary to the applicable presumptions that decedent intended the disposition of her entire estate and that testamentary dispositions are favored over partial or total intestacy.

Under D.C.Code § 18–308, therefore, the judge ruled that since the sister had predeceased the testatrix, the specific devise of money in Item III was deemed included within the devise contained in Item V.

## II.

The parties do not dispute most of the general principles governing this case. In *Knupp v. District of Columbia,* 578 A.2d 702 (D.C.1990), we summarized several of them as follows:

> The general rule in construing a will in the District of Columbia is that the testator's intent is the guiding principle. If the intent is clear from the language of the will, the inquiry ends there. However, "if the language 'upon its face and without explanation, is doubtful or meaningless' ... a court may examine extrinsic evidence in order to understand the will."

*Id.* at 704 (citations omitted). Some years ago Judge Prettyman, writing for the United States Court of Appeals for the District of Columbia Circuit, explained this process as follows:

> Intent can usually be seen upon the face of the words used in the will. If so, there is an end to inquiry. But sometimes the language used by a testator

---

1. D.C.Code § 18–308 provides:
 Unless a different disposition is made or required by the will, if a devisee or legatee dies before the testator, leaving issue who survive the testator, the issue shall take the estate devised or bequeathed as the devisee or legatee would have done if he had survived the testator. Unless a contrary intention appears by the will, the property comprised in a devise or bequest in a will that fails or is void or is otherwise incapable of taking effect, shall be deemed included in the residuary devise or bequest, if any, contained in the will.

2. D.C.Code § 19–701 provides:
 Where there is no surviving spouse or relations of the intestate within the fifth degree, reckoned by counting down from the common ancestor to the more remote, the surplus of real and personal property escheats to the District of Columbia to be used by the Mayor of the District of Columbia for the benefit of the poor.

does not convey certainty of meaning, and sometimes it conveys no meaning at all to a stranger. In such event, the inquirer must look at the facts and circumstances which surrounded the testator when he made the will. Often otherwise obscure or meaningless language becomes perfectly clear when viewed in the light of the circumstances in which it was written.

*Baker v. National Sav. & Trust Co.,* 86 U.S.App.D.C. 161, 162, 181 F.2d 273, 274 (1950); *see also In re Estate of Kerr,* 139 U.S.App.D.C. 321, 331, 433 F.2d 479, 489 (1970) ("Undeniably, the polestar in construction of a will is the testator's intention, in the ascertainment of which evidence extrinsic to the will frequently assumes a proper and helpful role").[3]

In this case, the trial judge did not feel constrained to resort to extrinsic evidence because she found the intent of the testatrix to dispose of her entire estate and leave nothing to pass by intestacy sufficiently clear on the face of the will. The judge reasoned:

> The presumption is that decedent intended to dispose of her entire estate [citing *Thomas v. Copenhaver,* 235 Va. 124, [129], 365 S.E.2d 760, 763 (1988)]. Decedent's estate consists of only personal property. It is apparent that the testatrix intended that other personal property not specifically devised should go to the four individuals named.

On appeal, the District argues that this reading of the will, in particular of the phrase "and other personal property," is

**3.** At the same time, however,

> This right to examine facts extrinsic to the written words of a will does not include the right to change the written words, if they are clear, or to supply a provision omitted by the testator, or to guess at what his intent would have been if he had thought of a contingency which he plainly did not think of or which is not covered by some general discernible intent. The right to look at extrinsic facts is limited to an effort to understand what the testator meant when he wrote language which, upon its face and without explanation, is doubtful or meaningless.

86 U.S.App.D.C. at 162, 181 F.2d at 274.

**4.** The residuary clause may be either general or particular, depending on whether it disposes of

plainly wrong—that the will is indeed unambiguous but in the contrary sense: it provides for specific bequests of property and manifests no intent by the testatrix to dispose of the residue of her property. In the District's view (or at least in its principal argument) the phrase "and other personal property," read in context, can mean only the rest of the tangible personal property in the decedent's apartment, and is not a residuary clause, either general or particular.

"A residuary bequest disposes of the remainder of the estate after all debtors have been paid and all other legacies satisfied." *Wyman v. Roesner,* 439 A.2d 516, 520 (D.C.1981).[4] It is distinguished from a specific legacy, which "is a gift of a specific thing, or of some particular portion of the testator's estate, ... so described by the testator's will as to distinguish it from other articles of the same general nature." 6 W. BOWE & D. PARKER, PAGE ON WILLS § 48.3, at 11–12 (rev. ed. 1961 & Supp. 1990). "A general residuary clause passes not only all the property or interests of which the testator did not attempt to dispose, but also all of the property of which he attempted to dispose by provision of the will outside of the residuary clause, but of which his disposition has for some reason failed, unless a contrary intention appears in the will." 4 W. BOWE & D. PARKER, § 33.54, at 387.

In arguing that the phrase "and other personal property" is not a residuary clause, the District relies on the principles of *noscitur a sociis* and *ejusdem generis.*[5]

all the property not otherwise disposed of or only property in a certain class, such as "other personal property." *Equitable Trust Co. v. Delaware Trust Co.,* 30 Del. Ch. 348, 370, 61 A.2d 529, 541 (1948).

**5.** "[These] maxims mean that the meaning of a word is or may be known from the accompanying words so that, under the rules, general and specific words, capable of analogous meaning, when associated together, take color from each other, so that general words are restricted to a sense analogous to less general." *LeRoy v. Kirk,* 262 Md. 276, 283, 277 A.2d 611, 614–15 (1971); *cf. United States v. Brown,* 309 A.2d 256, 258 (D.C.1973).

"[T]he doctrines of *noscitur a sociis* and *ejusdem generis* may qualify [a] bequest of personal property so as to render it less than all-inclusive." *Emmert v. Hearn*, 309 Md. 19, 25, 522 A.2d 377, 380 (1987). Although Item V of the will does not use words like "including" or "consisting of" following the phrase "contents of my apartment," it is not an unreasonable reading of the sentence to say that the phrase "and other personal property" takes color from and is limited by the previous enumeration of property clearly linked to the apartment. Moreover, although normally "[a] bequest of 'personal property' includes every form of personal property from whatever source it may be derived," "[t]he context may show that the term is limited to tangible personal property and that it is used as an equivalent to one meaning of 'goods and chattels.'" 4 W. BOWE & D. PARKER, *supra*, § 33.24, at 334–35. Limited by its context, it is reasonable to say that the testatrix intended the phrase "and other personal property" to exclude intangible property such as the money bequeathed elsewhere in the will.

■ But while the District's reading of the disputed phrase in context is reasonable, it is impossible for us to say that the interpretation of the will made by the trial judge was unreasonable. Under ordinary circumstances a person makes a will to dispose of her entire estate or at least of her estate as it exists at the time the will is made. 4 W. BOWE & D. PARKER, *supra*, § 30.14 at 98. The parties do not dispute that the personal property enumerated in Items III, IV and V constituted the decedent's entire estate. A residuary clause requires no special language, *id.* § 33.48, at 372, and a phrase such as "all other property" or "all other personal property" may serve to identify such a clause. *Id.* at 373; *Equitable Trust Co., supra* note 4, 61 A.2d at 541. Moreover, as in our sister jurisdic-

tion of Maryland, *see Emmert v. Hearn, supra,* 522 A.2d at 380, case law in this jurisdiction suggests that the phrase "personal property" is to be construed broadly unless a clear intent to limit it to, say, tangible property is indicated by the will. *See Galloway v. Galloway,* 32 App.D.C. 76 (1908) (clause devising "all of my household furniture, clothing and personal effects, absolutely" held to embrace cash proceeds of sale of house).[6] Finally, it was said long ago that the rule of *ejusdem generis,* as applied to the construction of wills, is only a presumption "easily rebutted by anything that shows the larger subject [*i.e.,* a broader description of property to be devised] was in fact in the testator's view." *Given v. Hilton,* 95 U.S. 591, 598, 24 L.Ed. 458 (1877).

■ Here the intent of the decedent to limit "other personal property" to additional contents of the apartment or other tangible property does not appear with such clarity that we can rule out a broader interpretation as unreasonable. Given the testatrix' apparent intent to account for all of her property at the time she made the will, it is plausible to conclude that she meant the phrase to encompass her entire remaining property in the event her sister predeceased her without issue. We conclude that the phrase "and other personal property" is ambiguous and the testatrix' intent not clear on the face of the will. A remand is therefore necessary to determine whether extrinsic evidence sheds material light on her intent.

■ The District argues that, assuming ambiguity in the will, no remand is necessary because the only "evidence" proffered so far of the circumstances surrounding its execution are the statements of the personal administrator and the drafter cited earlier. These statements expressed the former's view that the will contained no residuary clause and the latter's understanding

---

**6.** Although *Galloway* held that the phrase "and personal effects," as used in the will there under construction, embraced money as well as tangible personal property, that case does not compel a similar conclusion in this case. In *Galloway* the intent of the testatrix was unmistakable not to let "any portion of the balance of the estate

[other than the meager bequest of $5 each] ... descend to the sons" either by devise of intestacy. 32 App.D.C. at 79, 80. Failure to read the disputed words as a residuary clause leaving the balance of the estate to the daughter would have had exactly that effect.

that the testatrix assumed she would predecease her sister, implying that she did not intend Item V as an alternative disposition of the monetary bequest to her sister. On this record, however, we are unable to say with confidence that these statements rest on more than their authors' opinion of what the language of the will means; if so they are scarcely telling, or even necessarily admissible, as extrinsic evidence.[7]

The appellees, in turn, argue that a remand is unnecessary because the outcome is controlled by the rule of construction that "[g]enerally speaking if there are two permissible interpretations of a will courts prefer to adopt the one which will avoid intestacy." *Warner v. Warner*, 99 U.S.App.D.C. 80, 84, 237 F.2d 561, 567 (1956). Moreover, escheats are not favored by the law, "and any doubt whether property is subject to escheat is resolved against the state." 27 AM.JUR.2D *Escheat* § 10 (1966). But analysis of the proper role of such rules of construction in discerning the testatrix' intent demonstrates why these rules cannot be dispositive at this stage. Judge Prettyman, in the case cited earlier, explained this analysis in a manner deserving quotation in full:

> If no actual intent on the part of the testator can be discerned, either from his language alone or from that language *viewed in the light of the circumstances which surrounded him when he wrote,* the court must construe the will by applying to the language of the testator rules which the law has established as productive of the best results as a matter of public policy. Courts frequently describe this step as a presumption of intent; they say that the testator is presumed to have meant what the law has in the past construed equally obscure language to mean, or to have meant the result which the law favors. But this method of describing this process must not be confused so as to permit it to be a substitute for ascertaining the actual intent of the testator. *What is called presumption of intent cannot be indulged*

*if a true intent can be ascertained.* If no intent can be ascertained, rules of law are applied to the will by the court in order to reach a disposition of the property.

*Baker, supra,* 86 U.S. App.D.C. at 162, 181 F.2d at 274 (footnote omitted; emphasis added). Later Judge Prettyman revealed the breadth of the factual inquiry that properly may be conducted before intent is determined "by the application of rules of law":

> As we have already said, we do not find the intent clear upon the face of the will. We think, however, that there may be facts or circumstances within the knowledge of some living person which might throw light upon the intent. We have in mind such facts, among others, and without in any way limiting the court, as the amount and character of the estate; the proportion of the income represented by the $100 a month left to Baker; the personal characteristics and family circumstances of the three granddaughters as throwing light upon what appears to be a difference in treatment among them; and the intra-family relationship of the three granddaughters. If the actual intent of the testator can be ascertained by inquiry into such and similar facts, it should be so ascertained and given effect. If no actual intent on the part of the testator can be ascertained, then the will must be construed, as we have already pointed out, by the application of rules of law to the language used in the will.

*Id.* at 164, 181 F.2d at 276.

The order overruling objections to the final account is reversed and the case is remanded for the receipt and consideration of extrinsic evidence bearing on the issue of the testatrix' intent.

*So ordered.*

---

7. It is axiomatic that "[t]he understanding of a beneficiary with reference to the nature of the interest which is given to him [or her] is not admissible." 4 W. BOWE & D. PARKER, *supra,* § 32.8, at 262. Thus, any potentially self-serving statements by the four named individuals in Item V of the will as to their understanding of the testator's intent would not be admissible.